THE MISSOURI, KANSAS & TEXAS RAILWAY COM-
PANY v. SADIE E. BUSSEY.

No. 12,906.  (71 Pac. 261.)

RAILROADS—*Injury at Crossing.* Special findings of the jury examined in an action against a railway company for the recovery of damages for personal injuries received at a crossing, and *held*, that the same show contributory negligence on the part of the plaintiff.

Error from Labette district court; THOMAS J. FLAN-
NELLY, judge. Opinion filed January 10, 1903. Reversed.

*T. N. Sedgwick,* for plaintiff in error.

*W. D. Atkinson,* for defendant in error.

*Per Curiam:* This was an action brought by Sadie E. Bussey against the Missouri, Kansas & Texas Railway Company to recover damages for a permanent personal injury received in a collision between a train backing up in the railway yards of the defendant, across Johnson avenue, in the city of Parsons, and the vehicle in which the plaintiff was riding along said avenue.

As this controversy depends alone upon an examination of the special findings of fact made by the jury, and as from these findings may be gleaned all the facts essential to the determination of the controversy, a statement of the facts in the case, aside from

the findings made, is deemed unnecessary. The findings requested by plaintiff were as follows :

"Ques. 1. Do you find from the evidence that plaintiff sustained injury at the crossing of defendant's tracks over Johnson avenue, in the city of Parsons, on the evening of October 11, 1900 ? Ans. Yes.

"2. Do you find from the evidence that the injury sustained by plaintiff was caused by a collision of defendant's cars with a buggy in which she was riding ? A. Yes.

"3. Do you find from the evidence that said buggy was at the time being drawn by one horse ? A. Yes.

"4. Do you find from the evidence that the horse attached to said buggy at the time was being driven by T. C. Griffith ? A. Yes.

"5. Do you find from the evidence plaintiff at the time had any control over said vehicle, the horse, or the driver ? A. No.

"6. Do you find from the evidence Johnson avenue to be a street in the city of Parsons much used and traveled by the public where it crosses over defendant's right of way and tracks ? A. Yes.

"7. Do you find from the evidence the tracks of defendant crossing over Johnson avenue to be much used by defendant in the switching and in the operation of its trains, engines, and cars? A. Yes.

"8. Do you find from the evidence the buggy in which plaintiff was riding was struck by the rear car of a train being pushed northward by defendant over Johnson avenue? A. Yes.

"9. Do you find from the evidence that defendant was in the exercise of ordinary care in the speed with which it was at the time pushing its said cars over Johnson avenue ? A. Yes.

"10. Do you find from the evidence that defendant gave reasonable sufficient signals or warnings to plaintiff, as its said cars approached said Johnson avenue ? A. Not in sufficient time to avoid accident.

"11. Do you find from the evidence that defendant exercised ordinary care in the giving of signals or

warnings to plaintiff as its said cars approached Johnson avenue? A. No.

"12. Do you find from the evidence there was negligence on the part of plaintiff, Sadie E. Bussey, contributing to her injury? A. No."

The findings made upon defendant's request were as follows:

"1. Were the plaintiff and one Thomas C. Griffith riding together Thursday evening, October 11, 1900? A. Yes.

"2. During the ride of the plaintiff with said Griffith did she hold the lines and drive the horse; and if so, for what length of time? A. No.

"3. About what time did the plaintiff and said Griffith start upon their ride? A. About eight o'clock.

"4. How many times, if at all, did the plaintiff and said Griffith cross the railroad-tracks at the Johnson avenue crossing prior to the time of plaintiff's injury? A. Not at all.

"5. Was said ride of said plaintiff and said Griffith purely a pleasure ride? A. Yes.

"6. Did the plaintiff or said Griffith have any other object in taking said ride than that of pastime or pleasure? A. No.

"7. What was the character of the vehicle in which they were riding? A. One-horse buggy, with top down.

"8. Was the plaintiff at the time of said ride in possession of all her faculties of sight and hearing, and were they in their normal condition? A. Yes."

"10. What is the distance from the point opposite the Alfred hotel, on Johnson avenue, where plaintiff and said Griffith stopped, to the west track of the railway crossing said avenue? A. About seventy-five feet.

"11. What is the distance from the west rail of the west track to the east rail of the east track across said avenue? A. About 127 feet.

"12. What is the distance from the west rail of the

west track to the point on Johnson avenue where the collision between the buggy in which the plaintiff was riding and the train occurred? A. About sixty-seven feet.

"13. How fast were the plaintiff and said Griffith traveling at the time of and just immediately before said collision? A. About five miles an hour.

"14. How fast was said train going at the time of and just immediately before said collision? A. About five miles an hour.

"15. Did not said train pull south across Johnson avenue just before said collision? A. Yes.

"16. After pulling south, did not said train come to a full stop? A. Yes.

"17. If you answer the last question in the affirmative, state how far south of the south walk on Johnson avenue was the point at which said train came to a full stop? A. About 180 feet.

"18. Was not said train, at the time of said collision, traveling north over Johnson avenue? A. Yes.

"19. How many cars were there in said train at the time of said collision? A. About eleven cars.

"20. How far had said train traveled from the point at which it came to a full stop south of Johnson avenue to the point of collision with the buggy in which the plaintiff and said Griffith were riding? A. About 220 feet.

"21. How far did said train travel before coming to a stop after said collision? A. About ninety feet.

"22. Was said train stopped as quickly as it could be after the signal to stop was given? A. Yes.

"23. As said train proceeded north to Johnson avenue from the point where it had come to a stop, south of Johnson avenue, was not switchman Denny riding on the rear end of the rear car? A. Yes.

"24. Did not switchman Denny have in his hand, in plain view, a lighted lantern? A. Yes.

"25. Could not said lantern of switchman Denny have been seen by the plaintiff, if she had looked in the direction of said train while it was being moved toward and over Johnson avenue? A. No.

"26. If you answer the above question 'no,' you

may then state what there was to prevent said plaintiff and said Griffith from seeing said lantern light. A. Car..

"27. Could not the plaintiff have seen said train at any time after crossing the second track from the west. A. Yes."

"29. What is the distance from the east rail of the second track from the west over Johnson avenue to the point where the collision occurred? A. About forty-two feet.

"30. Did not said collision between said train and the vehicle in which said plaintiff and said Griffith were riding occur on the north side of Johnson avenue, at the point where the tracks of the defendant cross the same? A. Yes; close to center.

"31. Did the plaintiff see the moving train at any time prior to the collision with the vehicle in which she was riding? A. Yes; immediately before collision.

"32. Did the plaintiff warn said Griffith of the approach of said train prior to the collision? A. No."

"34. Did the plaintiff attempt to grab the lines from the hands of said Griffith just prior to the collision? A. No.

"35. Did the plaintiff seize the lines and attempt to take them from said Griffith just prior to the collision? A. No.

"36. What, if anything, did the plaintiff do to avoid the collision? A. Nothing.

"37. Did not night yardmaster Dean warn the plaintiff and said Griffith of the approach of said train prior to the collision? A. No.

"38. Did the plaintiff pay any attention whatever to the warning given them by said night yardmaster Dean? A. None given.

"39. Was night yardmaster Dean on the crossing and west of the track on which the collision occurred at the time he gave the warning? A. No.

"40. Did not the night yardmaster Dean have in his hand a lighted lantern at the time he gave the warning? A. Did not give any warning.

" 41.  Did not said night yardmaster Dean signal the plaintiff and said Griffith with said lantern?   A.  No:

" 42.  Did not said night yardmaster Dean also call to said plaintiff and said Griffith in a loud voice.   A. No.

"42½.  Did not switchman Denny call to the plaintiff and said Griffith, in a loud voice, to stop?   A. Yes.

"43.  Did not switchman Denny also signal said plaintiff and said Griffith with his lantern?   A.  No.

" 44.  Were not the warnings given by both switchman Denny and the night yardmaster Dean in ample time, if they had been heeded, to have prevented the injury?   A.  No.

" 45.  Did the plaintiff pay any attention to the warnings or signals given by either said night yardmaster Dean or said switchman Denny?   A.  No.

" 46.  Did the plaintiff see night yardmaster Dean and his lantern as they were approaching the crossing?   A.  No.

" 47.  If you answer 'no' to the last above question, you may then state what there was to prevent the plaintiff from seeing him?   A.  Not there.

" 48.  Did the plaintiff see switchman Denny riding on the rear end of the rear car of the train with which the buggy collided, as they were approaching and crossing over the tracks of the defendant immediately before the collision?   A.  No.

" 49.  If you answer the last question 'no,' you may then state what there was to prevent them from seeing him.   A.  Being on the east side of train.

" 50.  Could not the plaintiff and said Griffith, immediately after crossing the east rail of the second track from the west, see track No. 1, or the high-line track, as far south as the passenger depot of the defendant?   A.  Yes."

·  "53.  Was not engine No. 101 standing south of Johnson avenue at the time of the collision?   A. Yes.

"54.  If you answer the above question 'yes,' you may then state how far said engine was standing

south of the south sidewalk on Johnson avenue. A. About fifty feet.

"55. Was not engine No. 102 standing south of Johnson avenue at the time of the collision? A. Yes.

"56. If you answer the above question 'yes,' you may state how far south of the south sidewalk of Johnson avenue said engine was standing. A. About seventy feet.

"57. Did not engineer Morris signal the plaintiff and said Griffith with his engine as they were crossing over the two west tracks of the defendant on said Johnson avenue? A. No.

"58. Did the plaintiff and said Griffith pay any attention to the signals or warnings given by said Morris with his engine? A. No.

"59. What is the distance between the Neosho main-line, or loop track and track No. 1, or high-line track? A. About fifteen feet.

"60. Was not said train which collided with the buggy in which the plaintiff and said Griffith were riding passing over said Johnson avenue crossing on the lead track? A. Yes.

"61. At the time of the accident, were there any cars standing on track No. 1, or high-line track, north of the switch-stand and south of Johnson avenue? A. No.

"62. Were there any cars standing on the puzzle lead north of the switch-stand and south of Johnson avenue at the time of the accident? A. No.

"63. Was not said train which collided with the buggy in which plaintiff and said Griffith were riding moving north as said plaintiff and said Griffith approached the west track on said crossing? A. Yes.

"64. How far south on Johnson avenue was said train which collided with the buggy in which plaintiff and said Griffith were riding south of the south sidewalk over said crossing on Johnson avenue as the plaintiff and said Griffith crossed the second track from the west on said avenue? A. About eight feet.

"65. Did plaintiff exercise ordinary care to discover

whether or not any trains were approaching as the buggy drove on the tracks over said crossing? A. Yes.

"66. Was the horse which was driven by said Griffith a gentle and reliable driving horse? A. Yes.

"67. Was said horse in the habit of being frightened by the trains or cars when in their vicinity? A. No.

"68. Did the plaintiff, just before the collision between the train and the buggy in which she and said Griffith were riding, attempt to get up from the seat? A. No."

"70. Did her attempt to get up attract the attention of her companion, Mr. Griffith? A. She did not make any attempt to get up."

"72. State whether or not defendant was guilty of negligence, and if it was, state in what particular it was negligent. A. Guilty in not giving signals in sufficient time to avoid accident."

The general verdict and judgment were in favor of plaintiff. Defendant brings error.

In construing these findings, it is our duty to harmonize the special findings with the general verdict in support of the judgment rendered, if possible. (*Anderson v. Pierce*, 62 Kan. 756, 64 Pac. 633; *Kansas City v. Slangstrom*, 53 id. 431, 36 Pac. 706; *U. P. Rly. Co. v. Fray*, 43 id. 750, 23 Pac. 1039; *St. L. & S. F. Rly. Co. v. Ritz*, 33 id. 404, 6 Pac. 533.)

The train and the conveyance in which plaintiff was riding were approaching a common point at the same rate of speed. The jury found that defendant's negligence consisted in its not giving signals in sufficient time to avoid the accident, but it also found that plaintiff could have seen the approaching train at any time after crossing the second track from the west. This track was found to be about forty-two feet from the point of collision. The plaintiff was found to have been in full possession of all her mental faculties. It

was her positive legal duty to make a diligent use of her senses of sight and hearing in crossing these railway-tracks to avoid injury to herself and danger to others. It was found that she could have seen the approaching train at any time when within forty-two feet from the track upon which it was approaching. Hence, if she had performed her legal duty and looked, she would have seen the train.

It was also found that she did not see it until immediately before the collision ; hence, it must be held 'from these findings, we think, that plaintiff did not exercise that reasonable care and diligence for her own protection and the safety of others which the law requires to permit a recovery by her of damages for the injury. In *U. P. Rly. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529, it was held by this court :

''It is the duty of a person about to cross a railroad track to make a vigilant use of his senses as far as there is an opportunity, in order to ascertain whether there is a present danger in crossing. A failure to listen, or look, when by taking this precaution the injury might have been avoided, is negligence that will bar a recovery, notwithstanding the negligence of the railroad company in failing to give signals contributed to the injury.''

In *Roach v. St. J. & I. Rld. Co.* 55 Kan. 654, 41 Pac. 964, it was held :

''A person who drives a team onto a railroad crossing at a time when a regular passenger-train is about due, and neglects to look for an approaching train which he might have seen in time to have avoided injury to himself if he had looked, is guilty of contributory negligence barring a recovery for an injury received from such train.''

The same rule is declared in *Clark v. Mo. Pac. Rly. Co.*, 35 Kan. 350, 11 Pac. 134 ; *W. & W. Rld. Co. v. Davis*, 37 id. 743, 16 Pac. 78 ; *A. T. & S. F. Rld Co.*

*v. Townsend,* 39 id. 115, 17 Pac. 804; *A. T. & S. F.
Rld. Co. v. Priest,* 50 id. 16, 31 Pac. 674; *Young v.
Railway Co.* 57 id. 144, 45 Pac. 583; *Railroad Co. v.
Holland,* 60 id. 209, 56 Pac. 6; *Railroad Co. v. Willey,*
id. 819, 58 Pac. 472.

As the special findings are in direct conflict with
the general verdict, it cannot stand.

A more serious question, however, is, Are the special
findings made by the jury consistent with one an-
other and destructive of plaintiff's right of recovery?
If so, the court erred in not sustaining the motion of
defendant for judgment upon the findings. The jury
found in response to question 12 requested by plain-
tiff that there was no negligence on the part of plain-
tiff. This, however, was not a specific finding of an
issuable fact, but was a general conclusion drawn
from all the evidence upon the subject, which inheres
in the general verdict and is no stronger than the
general finding.

It was also found that plaintiff had no control over
the vehicle, the horse, or the driver. As she could
have seen the train at any time after she was within
forty-two feet of the track upon which the collision
occurred, had she looked, and as it was her duty to
.ook, the jury must have found the plaintiff free from
negligence upon the theory that, as she had no con-
trol over the conveyance, she could not have prevented
the collision even though she had seen the train when
at the distance of forty-two feet or less from the track
over which the train was passing, for in no other way
can the finding be reconciled. In *Bush v. Railroad Co.,*
62 Kan. 709, 64 Pac. 624, this court held:

"Where one person is riding with another for the
mutual pleasure of both, with equal opportunity to
see and ability to appreciate the danger, and is in
fact looking out for herself, but makes no effort to

avoid the danger, she is chargeable with the want of care which results in injury.''

In the opinion it was said :

''It is contended by plaintiff in error that, if Bowhay was guilty of contributory negligence in driving upon the track without looking or listening for approaching trains, such negligence is not imputable to the plaintiff in error.   The want of care which resulted in injury to the plaintiff in error is chargeable to her.   They were both engaged in a common purpose, mutual pleasure.   Her opportunity and ability to see and appreciate the danger were equal to his ; she was in no way relying upon him.   It is true he furnished the vehicle and he did the driving, but she seemed to have acted independently of him.   When they started from the point where they had stopped for the freight-train, she saw the track, knew they intended to cross it, appreciated the danger, and did not advise or suggest that they be more cautious, but did look for an approaching train, and was, in fact, the first to see it.''

In the light of this authority, does the finding that plaintiff had no control over the vehicle, the horse or the driver tend to acquit her of contributory negligence in this case ?   We think not.   In the absence of the express findings, it would have been presumed in support of the general verdict that plaintiff did look and could not see the approaching train.   The express finding, however, that she could have seen the train controls.

Again, in harmony with the special finding that she had no control over the vehicle, the horse, or the driver, in the absence of other findings, it might be presumed, in support of the general verdict, that she looked and saw the train after crossing the second track, but that the time was too short in which to warn her companion and cause the horse to be stopped

before the collision occurred. But this presumption cannot be indulged in the light of the finding that she did not see the train until immediately before the occurrence of the accident, and the further finding that she did nothing to avoid the collision.

As the only negligence found against the defendant in response to the direct question as to the negligence of defendant consists in not giving signals in sufficient time to warn plaintiff of the danger and avoid the injury, and as it was the duty of plaintiff in crossing over the switch yards to keep a vigilant lookout to avoid danger, and as she was in possession of all her mental faculties and could have seen the train if she had looked at any time within forty-two feet of the track on which the injury occurred, and as she did not look, or she would have seen the train, it is apparent the only consistent and harmonious construction which may be placed upon the findings made is that the plaintiff was guilty of contributory negligence in not looking, and, notwithstanding the fact she was not driving or controlling the vehicle in which she was riding, she should have seen the train and taken steps to avoid the collision, which she did not do.

In the light of the only construction that may be given the findings, plaintiff was guilty of contributory negligence which was the direct and proximate cause of the injury, and which avoids a recovery in this action.

It follows that the court erred in overruling the motion for judgment in favor of defendant upon the findings made, for which the case must be reversed and judgment entered in favor of defendant.

All the Justices concurring.