Fair v. Traction Co.

No. 21,362.

E. C. FAIR, *Appellee*, v. THE UNION TRACTION COMPANY,
*Appellant*.

SYLLABUS BY THE COURT.

AUTOMOBILE—*Collision with Street Car—Proximate Cause—Contributory
Negligence.* The evidence and findings considered, and *held*, the proxi-
mate cause of a collision between a street car and an automobile was
the unlawful speed at which the automobile was driven, although at
the moment of collision the automobile was moving at a lawful rate of
speed. *Held further,* the plaintiff, who was an occupant, but not the
driver, of the automobile, was guilty of negligence which contributed
to his injury.

Appeal from Montgomery district court; JOSEPH W. HOL-
DREN, judge. Opinion filed March 9, 1918. Reversed.

*John J. Jones,* of Chanute, and *Chester Stevens,* of Independ-
ence for the appellant.

*Thomas E. Wagstaff,* of Independence, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal in-
juries sustained through the collision of one of the defendant's
street cars with an automobile in which the plaintiff was rid-
ing. The plaintiff recovered, and the defendant appeals.

The automobile was driven by a doctor who was a friend of
the plaintiff, and who was taking the plaintiff to his home at
about eleven o'clock at night. Myrtle street in the city of In-
dependence extends east and west. Myrtle street is crossed by
streets running north and south, numbered consecutively from
east to west. The plaintiff lived on the south side of Myrtle
street, just west of Thirteenth street, which is fifty feet wide.
In front of the plaintiff's home Myrtle street is forty feet wide.
The street-car track is laid in the center of Myrtle street. At
Ninth street the automobile, going west on the north side of
Myrtle street, passed the street car, which was westbound.
The automobile proceeded at the rate of about twenty-five miles
per hour until Thirteenth street was reached. The driver then
commenced to reduce speed in order to make the contemplated

turn to the south to the plaintiff's home. The driver first turned to the right until near the north curb of the street, and then executed a curve to the south, going at the rate of about five miles per hour. As the automobile was crossing the street-car track, fifty-five or sixty feet west of Thirteenth street, it was struck by the street car, which was running at the rate of twenty to twenty-five miles per hour. The street car was equipped with headlights much like those of an automobile, and could be stopped within two hundred feet when running at the rate of twenty-five miles per hour.

The cause was submitted to the jury on the plaintiff's evidence, after a demurrer to the evidence had been overruled. The plaintiff and the automobile driver both testified that the plaintiff gave the driver no instructions or directions with reference to the management or operation of the automobile. The plaintiff testified as follows:

"Q. Now the street car was moving off just as you went by it? A. Yes, if I remember rightly it started up just as we went by.

"Q. Going in the same direction that you did? A. Yes, sir.

"Q. And the doctor went fast in order to keep ahead of the car? A. Yes, sir.

"Q. You knew that that street car was following you right down the street? A. That is the reason we were trying to get ahead of it or get away from it.

"Q. And for the purpose of getting away from that car you drove fast, as fast as twenty-five miles an hour? A. Yes.

"Q. You were perfectly familiar with that street car and the street-car track and the street? A. Yes, sir."

Among the defenses pleaded were the contributory negligence of the plaintiff and the excessive rate of speed of the automobile. The court refused to instruct the jury with reference to the statutory duty to operate automobiles on city streets at a rate of speed not in excess of twelve miles per hour. With the general verdict for the plaintiff, the jury returned special findings of fact, which follow:

"Q. No. 1. How far east of the point of collision could the approaching street car have been seen on the night of January 7, 1916, by one at or near the place where the automobile commenced to turn toward the track? A. 200 feet.

"Q. No. 2. Is it not a fact: (a) That the automobile was racing with the street car immediately before the collision? A. No. (b) That in order to keep ahead of the street car, the automobile was traveling at the rate of about twenty-five miles per hour from about the intersection of

Ninth and Myrtle streets to about the intersection of Thirteenth and Myrtle streets? A. Yes. (c) That the plaintiff knew these facts? A. Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .

"Q. No. 4. How far was the street car from the point of collision when the automobile started to cross the street-car track? A. About 150 feet.

"Q. No. 5. If the automobile at no time had run at a rate of speed to exceed twelve miles per hour, could the collision have occurred at the time, place, or in the manner in which it did occur? A. No.

"Q. No. 6. Did the plaintiff or Doctor Alford, at any time, warn or otherwise inform the motorman that the automobile was about to cross the street-car track? A. No.

.   .   .   .   .   .   .   .   .   .   .

"Q. No. 8. After the automobile crossed Ninth street, did the plaintiff know that the street car was following the automobile in which he was riding? A. Yes.

"Q. No. 9. If you find for the plaintiff, in what respect do you find the defendant, its agents, servants and employees negligent? A. Running too fast, not using proper signals."

A motion for judgment in favor of the defendant on the special findings was denied.

Since the plaintiff admitted and the jury found the plaintiff knew the street car was following the automobile, signals would have conveyed no information, and the jury were not warranted in basing their verdict on failure of the defendant to use proper signals. If by their finding relating to negligence the jury meant the defendant was negligent because the street car was operated at too great a rate of speed, in connection with the fact proper signals were not given, there was no basis for the verdict. If, however, the jury meant the defendant was negligent in two distinct and independent respects—running too fast and not using proper signals—the verdict must rest on the first ground alone. The only direct evidence bearing on the subject of proper speed for the street car was that of a former employee of the defendant, who said cars were ordinarily operated at the rate of twenty to twenty-five miles per hour. There was testimony that Myrtle street was one of the principal thoroughfares of the city, used by automobiles, street cars, buggies, and pedestrians, but the extent to which the street was used late at night was not shown, and there was no evidence whatever that any vehicle besides the automobile in which the plaintiff was riding was using the street, or that any

person crossed the street during the time the street car and the automobile moved from Ninth street to the point of collision. The evidence of several of plaintiff's witnesses was that the street was lighted and a person could see all the way up Myrtle street from Thirteenth to Ninth. The jury, therefore, resorted to some standard not revealed by the evidence for the finding that the defendant was negligent in respect to the speed of the street car. Granting, however, the car was operated at too great a rate of speed, we have this result: Two power-propelled conveyances go forward from a point on the same street, at the same time, in the same direction, at the same general rate of speed, and under the same conditions, except that one is confined to a fixed course while the other has a choice of courses and can be stopped more quickly. The one having greater freedom of movement turns in front of the other, and they collide. The street car is negligently used. The automobile is not. Manifestly there is something wrong with a verdict announcing such a conclusion.

The court is of the opinion the unlawful speed of the automobile directly and proximately contributed to the collision. The admitted purpose of the plaintiff was to reach his home on the south side of Myrtle street, beyond Thirteenth. The proper route was taken. To make the required turn across the street-car track to the plaintiff's home it was necessary to reduce the speed of the automobile. The speed was reduced to five miles per hour, and at the moment of the collision the automobile was not violating the statute. The statute fixes the maximum rate of speed for country roads as well as for city streets. If an automobile driver going to town should violate the statute several times on level stretches of good road, but on reaching the city limits should observe the law, and after driving several blocks should collide with a street car, his fast driving would bear no causal relation to the final event. The meeting of the automobile and the street car would be a mere fortuity. In this instance the causal connection is quite manifest. The finding of the jury that the automobile was not racing with the street car *immediately* before the collision is technically correct. The contest of speed ended a few seconds before the collision, when the automobile reached the point where it was obliged to slow down. All that high speed could accomplish was accomplished.

But for the distance of four blocks the automobile maintained twice the lawful rate of speed, for the purpose of keeping ahead of the street car, which is racing.  The ultimate goal was the plaintiff's home, and slackening speed to make the turn across the track was merely a method of reaping the reward of the unlawful conduct.  The jury properly found that the collision could not have occurred if the automobile had been operated at lawful speed, and the violation of the statute was a contributing cause of the collision.

While the driver of the automobile was a doctor, he was not answering an emergency call demanding excessive speed. (Gen. Stat. 1915, § 506.)  He was taking the plaintiff home. Although the drive was made for the plaintiff's convenience and benefit, it may be conceded the plaintiff was merely the driver's guest.  To accomplish the desired end a flagrant violation of a statute enacted for the public safety was persisted in for a long distance down Myrtle street.  By the frank admissions contained in the plaintiff's testimony printed above, he identified himself with the unlawful enterprise.  He approved it, consented to it, and participated in it.  He said, "that is the reason *we* were trying to get ahead of it."  Consequently, he was personally negligent, within the principles stated in the case of *Anthony v. Kiefner,* 96 Kan. 194, 200, 201, 150 Pac. 524.

The plaintiff and the automobile driver both testified that before the turn was made they looked back and saw no street car. They described the conditions and related what they did.  The jury found, however, that the street car could have been seen for a distance of 200 feet when the automobile commenced to turn toward the track, that the street car was 150 feet away when the automobile started to cross the track, and that the plaintiff knew the street car was following the automobile. The plaintiff had been identified with a violation of the speed law, the consequences of which were to be estimated and met. Under these circumstances the plaintiff was chargeable with what he could have seen when leaving a place of safety for a place of danger, and judgment should have been rendered for the defendant on the special findings of the jury.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.