No. 21,972.

John F. Schaefer, *Appellee,* v. The Arkansas Valley In-
terurban Railway Company, *Appellant.*

SYLLABUS BY THE COURT.

1. AUTOMOBILE—*Injuries at Railroad Crossing—Negligence—Contributory Negligence.* Where an interurban railway company permits needless obstructions to the view on its right of way near a country crossroad, such company must take such obstructions into account in the discharge of its duty to exercise due care in the operation of its cars at such crossing; and the company is liable in damages to a person who, free from negligence herself, was injured because such obstructions to her view rendered the crossing dangerous and because of the high rate of speed at which the company's car approached the crossing.

2. SAME—*Injuries at Railroad Crossing—Evidence—Photographic Exhibits.* Photographic exhibits which were introduced in evidence and which tend strongly to prove that there were no material obstructions to the view at a railway crossing over a rural highway, are insufficient, in a court of appeal, to overthrow the parol and other evidence contradictory thereto, when the jury gave greater credence to the latter than they did to the photographic exhibits.

3. SAME—*Injuries at Railroad Crossing—Evidence—Findings.* Where a jury in answer to special questions found that the person who was fatally injured at a railway crossing over a public highway could have seen the approaching interurban car in time to warn the driver of the vehicle in which she was riding, at 132 feet, and at 82 feet, but answered, "Can't say," and "Doubtful," in response to similar questions as to her range of vision at 15 feet, 25 feet, and 30 feet, such findings construed together do not establish her contributory negligence as a matter of law, and a jury's general verdict which is consistent with such findings must stand.

Schaefer v. Interurban Railway Co.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed March 8, 1919. Affirmed.

*Chester I. Long,* and *Austin M. Cowan,* both of Wichita, for the appellant.

*D. M. Dale, S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action for damages records another railway-crossing accident.

The plaintiff was traveling eastward on a public highway. He drove a Ford automobile, and his wife rode by his side. Defendant's interurban railway crossed this highway diagonally southeast and northwest. As plaintiff and his wife were crossing this railway track, his automobile was struck by defendant's northbound interurban car, and his wife was killed.

Because of plaintiff's contributory negligence he was nonsuited as to his own claim for damages for the death of his wife; but the trial court permitted a recovery of $1,000 in behalf of his minor children for their loss in the death of their mother, on the theory that she herself had been free from negligence.

No motion for a new trial was filed, appellant preferring that its appeal should be limited to a review of such errors of law as may inhere in the record and judgment.

Certain special questions were answered by the jury:

"1. Did not the deceased, Roxy Ann Schaefer, being seated on the front seat of the automobile and on the side from which the interurban car approached the crossing and not being engaged with the operation of the automobile, have a better opportunity of seeing the approaching interurban car than the plaintiff? Answer: The same opportunity.

"2. Did the deceased, Roxy Ann Schaefer, look for the approaching interurban car after passing the point 25 feet west of the interurban track Answer: Yes.

"3. Did the deceased, Roxy Ann Schaefer, warn the plaintiff of the approach of the interurban car before the automobile went upon the interurban tracks? Answer: No. . . .

"4. State the distance the interurban car approaching from the southeast could have been seen by a person looking for the same seated in the

front seat of a Ford automobile in the public highway—(a) 25 feet west of the center of the interurban track? Answer: Can't say.

"(b) 30 feet west of the center of the interurban track? Answer: Can't say.

"(c) 82 feet west of the center of the interurban track? Answer: 590 feet to 1,250 feet.

"(d) 132 feet west of the center of the interurban track? Answer: ⅛ to ¼ mile.

"5. Could the interurban car approaching from the southeast be seen by a person seated in the front seat of a Ford automobile upon the public highway—

"(a) 11 feet west of the center of the interurban track? Answer: In our judgment it could.

"(b) 15 feet west of the center of the interurban track? Answer: Doubtful.

"(c) 20 feet west of the center of the interurban track? Answer: No.

"6. In what distance could a Ford automobile containing two people on the front seat approaching the crossing in question at a speed of not more than six miles per hour on the public highway from the west be stopped after reaching a point twenty-five feet west of the center of the interurban track? Answer: 4 feet.

"7. Could a person seated in the front seat of a Ford automobile in the public highway 120 to 125 feet west of the center of the interurban track see the interurban car approaching from the southeast? Answer: Can't say. . . .

"8. If you find the defendant guilty of any act or acts of negligence which approximately caused the accident in question state what such act or acts of negligence were. Answer: Allowing trees and shrubbery to grow upon right of way and approaching a dangerous public crossing at a high rate of speed.

"9. What was the purpose of the plaintiff and the deceased in traveling in the automobile on the day of the accident? Answer: Going home.

"10. Was it the habit or custom of the deceased, Roxy Ann Schaefer, in driving with her husband in the Ford automobile, to keep a lookout for approaching cars at railroad crossings? Answer: Yes.

"11. Who in the Ford automobile first saw the interurban car approaching the crossing prior to the accident, the plaintiff or his wife? Answer: Wife. . . .

"13. Was the deceased, Roxy Ann Schaefer, familiar with the crossing in question and the approach to the same? Answer: Yes. . . .

"15. If you answer question 2 in the affirmative, state how many feet west of the center of the interurban track deceased, Roxy Ann Schaefer, looked for the car approaching? Answer: No evidence."

1. Defendant contends that the acts of negligence found by the jury were not the direct and proximate cause of the accident. The negligence found by the jury was "allowing trees and shrubbery to grow upon right of way and approaching a

Schaefer v. Interurban Railway Co.

dangerous public crossing at a high rate of speed." Of course, the operation of a railway train or interurban car at a high rate of speed in the open country is ordinarily not negligence at all. The track and equipment and the exclusive right of way are all constructed for the purpose of transporting passengers and property with high speed and safety, and ordinarily the railway company is not required to slacken speed at every country crossroads (*Railway Co. v. Judah*, 65 Kan. 474, 70 Pac. 346; *Bunton v. Railway Co.*, 100 Kan. 165, 169, 163 Pac. 801); but there are recognized qualifications of that rule. For example, if a railway engineer or motorman should see a person in difficulty at a country road crossing with a balky or frightened horse, or with a stalled automobile, in time to stop his train to avoid injury to such person, such engineer or motorman would be liable civilly and criminally if he willfully or negligently failed to do so, and ordinarily his employer would be liable in damages therefor.

The trial court gave this instruction:

"21. If the defendant discharged its duty of keeping its right-of-way adjacent to a public road that crosses its right of way free from obstruction such as trees and shrubs and discharges all the other duties imposed upon it, then as far as a traveler on a public road about to cross its track is concerned, it can run its cars at as high rate of speed as it desired, and the rate of speed, no matter how high it may be, is not an act of negligence so far as such traveler is concerned and cannot be the basis of an action for negligence by such traveler; but if the defendant negligently permits trees and shrubbery to stand upon its right of way adjacent to a public road that crosses its track, so that the view of a traveler as he approaches the track is obstructed thereby, then it is the duty of the defendant to use due care in the operation of its cars having in mind such obstruction, and to run them at such a rate of speed in approaching such highway crossing as to avoid doing unnecessary damage to those lawfully and properly using the same or about to use the same."

While high speed alone is not negligence, it may be and should be considered in connection with other circumstances, such as the physical condition of the crossing and the topography of the immediate vicinity, in determining whether the railway company was exercising due care in operating its interurban car, and due care or the want of it in this case depended to some extent upon the speed at which the defendants approached this dangerous crossing.

In *C. R. I. & P. Rly. Co. v. Hinds*, 56 Kan. 758, 44 Pac. 993, the pertinent rule was stated:

"Where the railway company permits needless obstructions to the view on its depot grounds, it is its duty to operate its trains with reference to such obstructions, and in such manner that travelers crossing the track on the highway, from which the view is so obstructed, may, by the exercise of ordinary care, avoid injury from such trains." (syl. ¶ 2.)

(See, also, *Railroad Co. v. Willey*, 57 Kan. 764, 48 Pac. 25; *Corley v. Railway Co.*, 90 Kan. 70, 71, 72, and syl. ¶ 1, 133 Pac. 555; *Artz v. The C. R. I. & P. R. R. Co.*, 44 Iowa 284; *The Terre Haute and Indianapolis R. R. Co. v. Clark, Administrator*, 73 Ind. 168; and Note in 22 L. R. A., n. s., 232.)

But persons in complete and independent control of their own movements, who are about to cross a railway track, like pedestrians and drivers of horse vehicles and automobiles, will not be permitted to recover against a negligent railway company unless they themselves are free from negligence. (*A. T. & S. F. Rld. Co. v. Priest*, 50 Kan. 16, 23, 31 Pac. 674; *Railway Co. v. Wheelbarger*, 75 Kan. 811, 88 Pac. 531; *Wehe v. Railway Co.*, 97 Kan. 794, 56 Pac. 742; *Williams v. Electric Railroad Co.*, 102 Kan. 268, 170 Pac. 397.)

There is a somewhat different rule which applies to persons riding in a buggy or automobile who have no control of the vehicle. While such persons are charged with the duty of looking out for their own safety as far as practicable (*Bush v. Railroad Co.*, 62 Kan. 709, 64 Pac. 624; *Railway Co. v. Bussey*, 66 Kan. 735, 71 Pac. 261; *Bressler v. Railway Co.*, 74 Kan. 256, 86 Pac. 472; *Fair v. Traction Co.*, 102 Kan. 611, 171 Pac. 649; and Note in 54 L. R. A., n. s., 1915 B, 955 *et seq.*), yet they are not necessarily negligent merely because their driver is negligent. (*Williams v. Withington*, 88 Kan. 809, 129 Pac. 1148; *Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558; *Denton v. Railway Co.*, 97 Kan. 498, 155 Pac. 812; *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555; *Burzio v. Railway Co.*, 102 Kan. 287, 171 Pac. 351.)

Here one of the elements of negligence was that of allowing trees and shrubbery to grow on the right of way near the crossing. The trees and shrubbery served no useful purpose of the railway company, and therefore their existence required a higher degree of care in the operation of a train or trolley car than would be imposed if the obstructions to the view were

Schaefer v. Interurban Railway Co.

necessary to the business of the company (*C. R. I. & P. Rly. Co. v. Williams,* 56 Kan. 333, 43 Pac. 246). It is also true that a railway company is not ordinarily chargeable with negligence where the obscurations of the view are outside its right of way and beyond its control. (*Railroad Co. v. Kistler,* 66 Ohio St. 326.) The court holds that the evidence was sufficient to justify the jury's findings that the obstructions to the view which rendered the crossing dangerous and the high speed at which the defendant's interurban car approached the crossing together constituted negligence and were the cause of the accident.

Four photographic exhibits of the surroundings, showing the trees, the crossing, and the defendant's railway track for varying distances up to half a mile or further, which were admitted in evidence and their authenticity scarcely disputed, are incorporated in defendant's abstract. These photographs tend strongly to prove that if the deceased had been looking out for her own safety she could not have failed to see the approaching trolley car; and they tend strongly to prove that the evidence for plaintiff was not true. But there is no rule which permits appellate courts to disturb a jury's findings because highly convincing photographic evidence may seem to overbalance the parol or other evidence to the contrary. Photographs are simply evidence and can receive no peculiar consideration on appeal; and this is particularly true where, as in this case, the defendant chose not to ask for a new trial on the ground of the verdict being contrary to the evidence. The court cannot avail itself of this photographic evidence to disturb the jury's findings as to the proximate cause of the accident. (*Corley v. Railway Co.,* 95 Kan. 124, 147 Pac. 842. See, also, *Pittman v. Hayes,* 98 Kan. 273, 276, 277, 157 Pac. 1193; *Kirsch v. Telegraph Co.,* 100 Kan. 250, 254, 255, 164 Pac. 267.)

2. Was the deceased guilty of contributory negligence? Ordinarily that, too, is a jury question. The court cannot say as a matter of law that because the deceased could have seen the trolley car while she was 132 feet from the crossing, and while she was 82 feet from the crossing, and failed to warn the driver, that she was guilty of contributory negligence. Nor does the fact that she could have seen the trolley car at 11 feet from the track and that the Ford car could have been stopped

in 4 feet make out a case of contributory negligence against the woman. It would take some slight interval of time, after getting within 11 feet of the track, to see the car, to recognize the danger, to determine what to do, to warn the driver, for the driver to realize the urgency of immediate action, and for him to stop the car. A jury could fairly conclude that there was insufficient time for such quick sequence of perception, thought, speech, and action.

Since the burden was on the defendant to prove the contributory negligence of the deceased, and to prove that the deceased could have seen the car within a reasonable distance of the crossing, in time to warn the driver of the approaching danger, the jury's findings, "Can't say" and "Doubtful," in response to questions touching her range of vision at 15 feet, 25 feet, and 30 feet, must be construed as a failure on the part of defendant to prove that she could see the car at those distances. The court cannot say that the legal effect of the jury's special findings makes a case of contributory negligence against the deceased, and this conclusion requires an affirmance of the judgment.

Judgment affirmed.