No. 24,156.

J. T. RATHBONE, and EMMETT RATHBONE, by J. T. RATHBONE, his Father and Next Friend, *Appellants,* v. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

RAILROAD CROSSING—*Collision with Automobile—Failure to "Stop, Look and Listen"—Contributory Negligence—Special Findings.* In an action for the death of a person in a collision with a train at a railway crossing over a public highway, where the general verdict was against the railway company, and where the special findings of the jury clearly showed that the deceased and the driver of a motor truck in which they were riding were guilty of contributory negligence, the trial court did not err in setting aside the general verdict and rendering judgment in favor of the railway company on the special findings of the jury.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 7, 1923. Affirmed.

*Elmer W. Columbia,* of Oswego, for the appellants.

*R. R. Vermilion,* and *W. F. Lilleston,* both of Wichita, for the appellee; *W. F. Evans,* of St. Louis, Mo., of counsel.

The opinion of the court was delivered by

DAWSON, J.: Here is another railway-crossing case. It was an action by a husband and son for the death of Bessie Rathbone, wife of one of the plaintiffs and the mother of the other.

Bessie Rathbone and her son, while on an errand for her husband,

were traveling northward on a public road in a Reo speed-wagon, approaching the defendant's railway crossing at the village of Hallowell. At that point the defendant's railway consisted of a main line and sidetrack, running east and west. The sidetrack was about 9 feet south of the main track. On the east side of the highway, immediately south of the railway, were an elevator, a corn crib, a coal bin and stockyards which shut out the view of trains approaching from the east. As Mrs. Rathbone and her son were passing over the main line track, their vehicle was struck by a westbound train, and she was killed.

Plaintiffs pleaded various wrongful acts and delicts on the part of defendant. The latter pleaded contributory negligence.

The jury's general verdict was in favor of the plaintiffs, but it was set aside and judgment entered for defendant on special findings also rendered by the jury. The propriety of such judgment is the question in this appeal, and its determination requires us to set out the special findings at some length:

"DEFENDANT'S . . . SPECIAL QUESTIONS.

"Three: On the occasion in question did Emmett Rathbone completely stop the automobile truck to ascertain before driving on the main line track whether it was safe to proceed? Answer: He did not.

"Five: On the occasion in question at what rate of speed per hour was defendant's train approaching the point of accident? Answer: 35 to 40 mi. per hour.

"Six: If on the occasion in question, when Emmett Rathbone or Bessie Rathbone, where they sat in said automobile truck, got within nine feet of the main line track, they had come to a complete stop and had listened and looked for an engine or train along the main line in the direction from which the engine and train were then coming thereon, what, if anything was there to prevent them or either of them from seeing or hearing the approaching engine and train? Answer: Nothing.

"Seven: If on the occasion in question, when Emmett Rathbone or Bessie Rathbone, where they sat in said automobile truck, got within seven feet of the main line track, they had come to a complete stop and had listened and looked for an engine or train along the main line in the direction from which the engine and train were then coming thereon, what, if anything, was there to prevent them or either of them from seeing or hearing the approaching engine and train? Answer: Nothing.

"Eight: If you find for plaintiffs, please state upon what grounds of negligence, if any, you base your verdict. Answer: Condition of crossing.

"Nine: On the occasion in question, when Emmett Rathbone and Bessie Rathbone, where they sat in said automobile truck, were nine feet south of the south rail of the main line track, could the defendant's fireman have seen them

Rathbone v. Railway Co.

or either of them if he had then looked in that direction from the fireman's cab? Answer: Yes.

"Ten: Do you find that Emmett Rathbone first saw the defendant's approaching engine between twenty-five and fifty feet away when the seat of the automobile truck was about over the south rail of the main line track? Answer: Yes.

"PLAINTIFFS' SPECIAL QUESTIONS.

"No. 1. If the crossing had been level and free of ruts and depressions, would the train have struck the truck containing Bessie Rathbone, deceased? A. No, not in our judgment.

"No. 2. If the crossing had been level for thirty feet on each side of the main line track and free of depressions, where, in reference to the main line track, would the truck containing Bessie Rathbone, deceased, have been at the time the train arrived at the point where the accident did occur? A. Clear of the main line.

"No. 3. At the time when the train struck the automobile truck, how fast was truck traveling? A. 2 to 3 miles per hour.

"No. 4. If you find that the truck had almost come to a stop what caused the truck to almost stop? A. Condition of the crossing.

"No. 5. What were Emmett Rathbone and Bessie Rathbone doing just before entering upon said crossing? A. Don't know."

It will be noted that the negligence of the railway company (finding 8) was limited to the condition of the crossing. This in effect acquitted the defendant of the other charges of negligence. (*Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590.) As to this particular negligence, the plaintiffs' brief reads:

"The facts were, as disclosed by the evidence, that the distance between the north rail of the side track and the south rail of the main line track was nine feet nine inches; that the highway of the crossing was four or five inches higher on the south than the side track; that there was a sharp incline just before reaching that point about five or six feet from the south rail of the side track and that the road was five or six inches higher than the side track; that there was a rut between the side track and the main line and that it was rough between the rails. That the main line track was fourteen inches higher than the side track and the rail of the main line higher than the road right next to it by two or three inches; that the main line track was rough; that there were some planks between the rails on the crossing and that it was rough between the planks. Testimony . . . proved conclusively that the crossing was in a dangerous condition and in such condition as would retard the progress of a vehicle. . . . The rails on the main line were an inch to an inch and a half higher than the boards."

But notwithstanding defendant's negligence in the way it maintained the crossing it was incumbent upon Emmett and Bessie Rathbone, before they attempted to cross the railway track where

their vision was shut off by obstructions to ascertain positively that no train was approaching and that they could safely cross. This they did not do. Note the plaintiffs' question No. 5 and its answer. The jury did not know that they did anything; that is, it was not shown to the jury's satisfaction that Emmett and Bessie Rathbone had taken the requisite precaution to ascertain that they could cross in safety. The answers to defendant's questions Nos. 6, 7 and 9 clearly establish the fact that if they had stopped their car before attempting to cross the track, and had looked, they would have seen the defendant's train near at hand and traveling 35 or 40 miles per hour. These findings, in effect, resolve the question of Emmett's and Bessie's contributory negligence in accordance with the railway company's main defense to this action.

In *Williams v. Electric Railroad Co.,* 102 Kan. 268, 271, 170 Pac. 397, it was said:

"Was the plaintiff free from negligence? The embankment and weeds obscured his vision as he approached the crossing, yet he did not stop his automobile to determine whether he might cross in safety. At fifteen feet from the crossing nothing prevented him from seeing the approaching car. Even then, if plaintiff had been taking proper precaution for his own safety, he could have stopped his automobile before it reached the track, for its speed was only four or five miles an hour. The rule in this state is that when one is about to cross a railroad track, and cannot otherwise assure himself that he may safely do so, he must stop, look, and listen. (*Bunton v. Railway Co.,* 100 Kan. 165, 168, 163 Pac. 801; *Burzio v. Railway Co.,* post, p. 287, just decided, and citations therein.) Such, indeed, was the general rule in the cases of pedestrians and horse-drawn vehicles before the coming of automobiles. (*A. T. & S. F. Rld. Co. v. Townsend,* 39 Kan. 115, 17 Pac. 804; *Railroad Co. v. Willey,* 60 Kan. 819, 58 Pac. 472.) With the coming of the automobile, a highly scientific invention and easy of control, and with its great weight and steel construction and its consequent capacity for imperiling the traveling public in case of collision, the courts have been compelled to develop a more rigid rule, or rather to insist more rigidly upon the application of the old rule, touching the duty of self-preservation imposed on those about to cross a railway track in such a vehicle. (*Wehe v. Railway Co.,* 97 Kan. 794, 156 Pac. 742; *Jacobs v. Railway Co.,* 97 Kan. 247, 154 Pac. 1023; *Cathcart v. Oregon-Washington R. & Nav. Co.,* [Ore.] 168 Pac. 308.)"

We do not overlook the answers of the jury to plaintiffs' questions Nos. 1, 2, and 4. It is settled law in this state that it is negligence to attempt to cross a railroad track ahead of a speeding train, even in a case where but for a defective crossing the party making such foolhardy attempt would have escaped unscathed, by a few ticks of the clock. (*Bunton v. Railway Co.,* 100 Kan. 165, 163 Pac. 801.)

Plaintiffs adduced some evidence to show that Bessie Rathbone was on a shopping errand of her own and not on the business of her husband when she was killed. In that situation the negligence of her son under some circumstances would or might make a difference in the extent of the rights of any nonculpable members of her family to a claim against the railway company for her death. (*Schaefer v. Interurban Railway Co.*, 104 Kan. 394, id., 740, 179 Pac. 323; 181 Pac. 118.) But even if she were riding as a guest, she would be bound to look out for herself as far as practicable. The jury found that she did nothing at all so far as they could tell. (*Fair v. Traction Co.*, 102 Kan. 611, 171 Pac. 649; *Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744.) Even if that fact were not in itself a complete bar to recovery, here one of the plaintiffs is the son whose contributory negligence brought about his mother's death, so he cannot recover. And as the son was the agent of the father, who is the other plaintiff, the son's contributory negligence was attributable to the father, under the ordinary rules of law relating to principal and agent, so the father cannot recover.

Affirmed.