No. 46,844

CLIFFORD SCHMIDT and SHIRLEY SCHMIDT, Husband and Wife, Parents and Sole Heirs at Law of GREGORY SCOTT SCHMIDT, deceased, *Plaintiffs-Appellants,* v. CHARLES K. MARTIN, *Defendant-Appellee.*

(510 P. 2d 1244)

Opinion filed June 9, 1973.

*Michael E. Chalfant,* of Branine, Chalfant and Hyter, of Hutchinson, argued the cause, and *H. R. Branine, W. Y. Chalfant,* and *Charles K. Hyter,* of the same firm, were with him on the brief for the appellants.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause, and *Lee Turner,* and *Tom Kelley,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by Clifford Schmidt and Shirley Schmidt, appellants and plaintiffs below, against Charles K. Martin, appellee-defendant, to recover damages for the wrongful death of their son, Gregory Scott Schmidt. The case was tried to a jury in the district court resulting in a verdict in favor of the defendant. The facts are not greatly in dispute and are substantially as follows: Mr. and Mrs. Schmidt, who will be referred to as the plaintiffs, were the parents of Gregory, a nine-year-old boy. On November 21, 1969, at about 3 o'clock p. m., Mr. Schmidt stopped at the home of his brother, Gary Schmidt, and advised the boy's uncle that he was going to drive his wife and three children to Hutchinson to pick up a car that was being repaired. Gary Schmidt, who was age 22 at the time, suggested that the Schmidts leave the children with him while the parents went to get the car. The plaintiffs decided to leave Gregory with

Uncle Gary. The evidence discloses that the uncle had taken care of Gregory on other occasions. There was no discussion between the boy's uncle and father as to where the uncle would take the child, nor did Mr. Schmidt give any instructions as to how Gary should take care of Gregory. That same evening at 6:30 p. m. an automobile collision occurred which resulted in the death of young Gregory. The evidence at the trial disclosed that the boy was a passenger in an automobile driven by his uncle, Gary Schmidt, which collided at an intersection with an automobile driven by Charles K. Martin, the appellee-defendant. The evidence in the case indicated that the defendant Martin was negligent in making a left-hand turn in front of the uncle's car and that the uncle was also negligent in driving at an excessive rate of speed. As stated heretofore the jury brought in a verdict in favor of the defendant Martin. The plaintiffs as parents of the deceased child have brought a timely appeal to this court.

As their first point on this appeal the plaintiffs contend that the trial court erred in instructing the jury that any negligence of the uncle Gary Schmidt, as the custodian of the child, is imputed as a matter of law to the parents. In order to bring the issue more sharply into focus we should examine the trial court's instruction No. 8 which was as follows:

"The jury are instructed that if the parents of a child entrust it to the temporary custody of another, and the negligence of the custodian proximately contributes to an accident resulting in death to the child, such negligence is, on principles of agency, imputed to the parents and has the same effect on their right to recover as if they themselves had been guilty of the negligent act.

"An agent is a person who, by agreement with another called the principal, performs or is to perform services for the principal with or without compensation. The agreement may be written, oral or implied by the behavior of the parties."

The issue is whether or not the instruction correctly states the law to be applied in this case. At the outset it is important to emphasize that the issue is not whether the parents may be barred from recovery for the death of their minor child as the result of *their own negligence* which contributes to cause the child's death. The rule is well recognized that where the death of a minor child results from the contributory negligence of a parent and that of a third person and under the applicable wrongful death statute the damages recoverable for the death of the child are solely for the benefit of the parent who negligently contributed to the child's

death, such contributory negligence of the parent bars him from recovering from the third person on account of the child's death. (*Schaefer v. Interurban Railway Co.*, 104 Kan. 394, 179 Pac. 323; *Turner v. Railway Co.*, 106 Kan. 591, 189 Pac. 376; and the cases set forth in the annotation in 2 A. L. R. 2d 785.) A parent may be barred from recovery for his own negligence in knowingly placing a child in the custody of an unsuitable custodian.

We are concerned here with the doctrine of imputed negligence. The term "imputed negligence" refers to the doctrine that places upon one person responsibility for the negligence of another. In *Scott v. McGaugh*, 211 Kan. 323, 506 P. 2d 1155, Mr. Justice Fromme points out that the doctrine of imputed negligence is an artificial creation of the law arising out of the relationship of parties and is referred to as vicarious responsibility. Such responsibility or liability is imputed by reason of some special relationship of the parties. The subject is discussed in depth in Prosser, Law of Torts, 4th Ed., pp. 458-491. In the law of torts there are a number of special relationships where the doctrine of imputed negligence has been recognized and brought into play by court decisions. These special relationships are as follows: Parent and child; husband and wife; driver and passenger; owner of vehicle and driver; bailor and bailee; master and servant; joint enterprise; and parent and custodian of a child. The doctrine of imputed negligence has been widely criticized and rejected in its application to many situations by the courts of this country.

This court from an early date has been highly critical of the doctrine of imputed negligence, pointing out that it is a fiction of the law which finds small favor with the courts. (*Reading Township v. Telfer*, 57 Kan. 798, 48 Pac. 134; *Hunter v. Brand*, 186 Kan. 415, 350 P. 2d 805.) In the course of our judicial history we have rejected the application of the doctrine of imputed negligence in five of the recognized relationships. We rejected the doctrine in the parent-child situation by holding that a child is not responsible for the contributory negligence of his parents. (*Burzio v. Railway Co.*, 102 Kan. 287, 171 Pac. 351; *Garcia v. Slater-Breitag Yeamans Motor Co.*, 128 Kan. 365, 278 Pac. 23; *Becker v. Rupp*, 187 Kan. 104, 353 P. 2d 961; *Staudinger v. Sooner Pipe & Supply Corporation*, 208 Kan. 100, 490 P. 2d 619; *Frazey v. Hoar*, 208 Kan. 519, 492 P. 2d 1316.) We have held that the negligence of the husband as driver of an automobile will not as a matter of law be imputed to his wife, a passenger. (*Applegate v. Home Oil Co.*, 182 Kan. 655,

324 P. 2d 203; *Hunter v. Brand,* supra.) We have adopted the rule that liability for an automobile accident does not attach to the owner of the car from the mere fact of ownership so as to impute the negligence of the driver to the owner as a matter of law. (*Halverson v. Blosser,* 101 Kan. 683, 168 Pac. 863; *Zeeb v. Bahnmaier,* 103 Kan. 599, 176 Pac. 326; *Stilwell v. Faith,* 142 Kan. 730, 52 P. 2d 635; *Alcaraz v. Welch,* 205 Kan. 163, 468 P. 2d 185.) We have refused to impute the negligence of a driver to a passenger in the absence of an equal right of control. (*Clark v. Railroad Co.,* 115 Kan. 823, 224 Pac. 920.) In *Bower v. Railroad Co.,* 106 Kan. 404, 188 Pac. 420, we rejected the application of the doctrine of imputed negligence to a bailor-bailee relationship.

We have approved and accepted the doctrine of imputed negligence when applied to two special relationships. These are the master-servant relationship (*Rathbone v. Railway Co.,* 113 Kan. 257, 214 Pac. 109; *Hurla v. Capper Publications, Inc.,* 149 Kan. 369, 87 P. 2d 552) and joint enterprise (*Howard v. Zimmerman,* 120 Kan. 77, 242 Pac. 131; *Schmid v. Eslick,* 181 Kan. 997, 317 P. 2d 459; *Scott v. McGaugh,* supra.)

This is the first time that we have had presented to us for decision the question of whether or not the negligence of a custodian of a child should be imputed to his parents as a matter of law solely on the basis of that relationship. The trial court answered this question in the affirmative, accepting the rule which has been adopted by the majority of the jurisdictions in this country. There is an extensive annotation on this subject in 23 A. L. R. 655, where the majority and minority views are stated. The majority view appears to be that the contributory negligence of the custodian of a child, proximately contributing to his injury or death, is imputed to the parent as a matter of law. The rationale of the majority view is that if the parent selects a custodian for the child or permits the child to be in the custody of another, such person is *in loco parentis* or is the agent of the parent. Hence the negligence of the custodian will be imputed to the parent. This general rule has been held in some cases not to apply where the custodian is selected by another party by authority of law and the parent has no right to control his conduct. (*Union Traction Co. v. Gaunt,* 193 Ind. 109, 135 N. E. 486.) The California decisions do not apply the doctrine of imputed negligence where the custodian is acting gratuitously without compensation. (*Casas v. Maulhardt Buick, Inc.,* 66 Cal. Rptr. 44, 258 C. A. 2d 692; *Harpst v.*

*Kirkpatrick,* 102 Cal. Rptr. 621, 26 C. A. 3d 482.) The rationale of the California view is that in the absence of a true agency relationship, the negligence of a third person caring for a child at the parent's request will not be imputed to the parent.

The doctrine of imputed negligence is rejected in a minority view adopted by Iowa (*Walters v. The C., R. I. & P. R. Co.,* 41 Iowa 71.) and by South Carolina. (*Watson v. Southern Ry.,* 66 S. C. 47, 44 S. E. 375.) The minority rule is stated by the Supreme Court of Iowa in *Walters* as follows:

"When the parents of an infant are unable to give him their personal care and intrust him to the supervision of a suitable person, the negligence of the latter cannot be imputed to the parents, and will not defeat a recovery for negligence resulting in the death of the infant." (Syl.¶ 6.)

The Iowa court reasoned:

". . . When the parents then cannot give their personal supervision to a child, and they place it in charge of a proper person, and he acts negligently, is such negligence to be imputed to the parents? If the rule denying relief to a party who has been negligent arose out of consideration for the defendant, this question must be answered in the affirmative, for if the injury to the deceased was contributed to by others than the defendant, the result as to defendant is the same, whether this contributory negligence arose from the acts of the parents, or from another to whose custody the parents had entrusted the child.

"But, as we have already seen, this rule has its primary foundation upon grounds of public policy, and is not intended especially for the benefit of the defendant. When, therefore, the parents, who are primarily intrusted with the protection and care of their infant children, and who are entitled to the pecuniary compensation which the law allows for a wrongful act resulting in their death, exercise reasonable and ordinary care, the public interests are subserved, and there is no good reason why the negligence of the person in charge of the child should be imputed to the parent, and through the parent to the child itself." (pp. 79, 80.)

We have considered the many cases on this subject and have concluded that in this day and age the doctrine of imputed negligence should not be applied as a matter of law where the parent-custodian relationship exists. In arriving at this conclusion we have noted the decisions of this court pointing out that imputed negligence is a fiction of the law not favored by the courts. It seems clear to us that in any situation the only logical basis for the imputation of the negligence of one person to another is the right of the latter to control the acts of the former. If the doctrine of imputed negligence ever had any validity in parent-custodian situations, it should not be applied today in a world of working mothers and the universal use of babysitters. In many cases arising today the custodian of a child is simply not subject to such a right to control by

the parent as to justify imputed liability on the basis of an agency relationship. California has recognized this fact in its refusal to apply the doctrine of imputed negligence where the custodian is a member of the family or is acting gratuitously without compensation. The Restatement of the Law, Torts 2d, § 485, rejects the doctrine of imputed negligence in the absence of the master-servant relationship (§ 486), or of a joint enterprise (§ 491), or in an action for death or loss of services, where the negligence of the person who was injured bars recovery by the person who has been deprived of the relation (§ 494).

We hold that in the absence of statute in order to impute the negligence of one person to another, the relation between them must be one invoking the principles of agency or the persons must be co-operating in a common or joint enterprise, so that the person to whom the negligence is imputed has a legal right to control the acts of the person actually negligent. As applied to a parent-custodian situation such as we find in the case at bar, we hold that in the absence of a true agency relationship, the negligence of a third person caring for a child at the parent's request will not be imputed to the parent. We further hold that the negligence of a third party in caring for a child at the request of the parent is not, as a matter of law, imputed to the parent.

We further find that under the circumstances presented in this case, there was not a true agency relationship so as to impute any negligence of the custodian of the child to his parents. We conclude that the trial court was in error in giving instruction No. 8 to the jury. That instruction, of necessity, barred the plaintiffs from recovery as a matter of law when the jury found that the negligence of the uncle was a contributing cause of the collision.

Points two and three on this appeal arose in the course of the trial as the result of uncertainty whether or not an affirmative defense was an issue in the case. We note from the record that in his answer the defendant raised the affirmative defense that the plaintiffs were careless and negligent in allowing the deceased, Gregory Schmidt, to ride in a vehicle operated by Gary Schmidt. In regard to the negligence of the parents an interrogatory was submitted to the defendant by the plaintiffs asking defendant to state precisely the carelessness and negligence of the plaintiffs in allowing Gregory to ride as a passenger in the vehicle driven by Gary Schmidt. The defendant answered this interrogatory by stating that the negligence of the plaintiffs consisted of permitting their son to ride with a

known careless, reckless driver. It seems clear to us that prior to the pretrial conference at the pleading and discovery stages of the case, the contributory negligence of the parents in permitting their son to ride with Gary Schmidt was a valid issue raised in the case as an affirmative defense. It is not clear what took place at the pretrial conference but we note the following statement in the pretrial order:

"Defendant does not plead contributory negligence but states the sole cause of the accident was negligence of Gary Schmidt who at the time was agent, servant and employee for plaintiffs."

One would assume from reading the pretrial order that the affirmative defense of contributory negligence of the parents in selecting an unsuitable custodian for their child was no longer an issue in the case. At the trial of the case the defendant sought to introduce evidence that the uncle, Gary Schmidt, had a general reputation for being a reckless driver. The defendant contended that such evidence was permissible on the issue of the contributory negligence of the parents in the selection of an unsuitable custodian for their child. The parents contended that this issue had been removed from the case at the pretrial conference. The trial court finally permitted evidence of the general reputation of the driver Gary Schmidt to go into evidence on the theory that the subject had been opened up on cross-examination of the plaintiff Clifford Schmidt.

To further complicate the matter after all the evidence was presented and both of the parties had rested, the trial court permitted the defendant to amend his answer by adding an affirmative defense as follows:

"Plaintiffs were contributorily negligent as they gave the care, and custody of their son, Gregory, to Gary Schmidt without exercising due care for the care of their son."

The trial court permitted the amendment under the authority of K. S. A. 60-215 (b) which permits such amendment of the pleadings as may be necessary to cause them to conform to the evidence. The plaintiffs complain in point three that permitting the defendant to make this late amendment by adding the affirmative defense seriously prejudiced their rights by denying the plaintiffs an opportunity to meet the issue since both of the parties had presented all of their evidence and had rested when the amendment was allowed. We are inclined to believe that the plaintiffs' point is well taken. Plaintiffs were entitled to know at the pretrial conference whether or not the issue of the contributory negligence of the parents in the selec-

tion of a custodian was an issue in the case. This is a matter which should not arise on a retrial of the case, since the answer has been amended to raise the issue. At a new trial evidence of the general reputation of Gary Schmidt as a reckless driver would be material on the issue raised by the amendment to the answer, whether or not the parents were negligent in knowingly placing their child in the custody of a reckless driver.

The fourth point raised by the plaintiffs involves the failure of the court to give plaintiffs' requested instruction on concurring negligence. The trial court refused to give the instruction because it was not presented in writing or submitted to the court within the time allowed for the submission of requested instructions. In our judgment the refusal to give the requested instruction because not timely presented was within the sound discretion of the trial court. We assume that at a new trial of this case the plaintiffs will submit requested instructions within the time allowed by the court.

For the reasons set forth above the judgment of the trial court is reversed and the case is remanded to the district court with instructions to grant to the plaintiffs-appellants a new trial in accordance with the views expressed in this opinion.