No. 23,732.

C. A. Kessler, *Appellee*, v. James Cox Davis, as Agent, etc. (substituted for John Barton Payne), *Appellant*.

SYLLABUS BY THE COURT.

1. Negligence—*Railroad Crossing—Certain Special Findings Unsupported by Evidence*. In an action against the railroad management because of an automobile being run into at a street crossing it is held that the evidence was sufficient to sustain findings of negligence in causing a train to approach a station and cross a street less than a block from it at too great speed, and in failing to give proper signals, but not to sustain findings that the collision was due to defects in the crossing or to unnecessary obstructions to vision on the right of way.

2. Same—*Whether Driver of Auto and Plaintiff Were Engaged in Common Enterprise—Question for Jury*. The evidence is held not to show conclusively that the plaintiff and the driver of the automobile were engaged in a common enterprise in such sense as to render the former chargeable with the negligence of the latter, that question, in the circumstances shown, being one of fact to be submitted to the jury.

3. Same—*Contributory Negligence of Passenger in Automobile*. Where the driver of an automobile and a person accompanying him are not engaged in a common enterprise and the situation is such that due diligence requires the driver to stop before attempting to cross a railroad track to assure himself that no train is approaching at a dangerous distance, the person accompanying him is not negligent as a matter of law in failing to see that such stop is made.

4. Same—*Contributory Negligence*. The evidence is held not to show the plaintiff to have been personally guilty of contributory negligence as a matter of law.

5. Same—*Verdict—Finding in Conflict with Evidence*. A verdict for the plaintiff is set aside because it is necessarily founded on a mere estimate of a distance at which an approaching train could be seen from a certain point, which is in conflict with evidence based on actual measurements that are not otherwse contradicted.

6. Same. Several assignments of error are held not to require a ruling.

Appeal from Labette district court; Elmer C. Clark, judge. Opinion filed June 10, 1922. Reversed.

*W. P. Waggener, J. M. Challis,* both of Atchison, and *E. L. Burton,* of Parsons, for the appellant.

*C. E. Pile,* and *L. E. Goodrich,* both of Parsons, for the appellee.

The opinion of the court was delivered by

MASON, J.: While C. A. Kessler was riding in an automobile belonging to and driven by Howard Shearhart the car was struck at a street crossing by the engine of a Missouri Pacific passenger train and Kessler was severely injured. He sued the federal agent who was in charge of the road and recovered a judgment, from which the defendant appeals.

1. The defendant asserts that there was no evidence that the railroad management was negligent in any respect. Four forms of negligence were alleged, and the jury specifically found that the defendant was guilty of all of them: "Maintaining an improper crossing; maintaining obstructions on the right of way; approaching an obstructed crossing at excessive speed; failing to sound proper crossing signals." There was evidence that the crossing was not maintained in conformity with the statute, but we find nothing to indicate that the collision was in any degree due to its defects. The petition charged that the view of the track from the street near the crossing was obstructed by unnecessary buildings, trees and fences. The plaintiff testified that his view of the approaching train was cut off by a section house on the right of way and by a curve in the track—that otherwise he could have seen up the track for a mile. This testimony practically took the other obstacles out of consideration in this aspect of the matter. The section house was a necessary and useful building. Its position on the right of way was a matter to be taken into account in connection with the obligation on the part of the railroad management to give signals and with regard to the question of contributory negligence, but we do not think it could alone constitute actionable negligence. (See *Corley v. Railway Co.*, 90 Kan. 70, 71, 133 Pac. 555.) Therefore, the judgment could not be sustained upon either of the two grounds already discussed. Their elimination, however, does not warrant a reversal if either of the other two grounds of negligence is sustainable, and we think there was evidence to support both. Witnesses estimated the speed of the train at twenty to forty miles an hour. While other evidence tended to weaken this, the matter was one to be submitted to the jury, together with the question whether the rate found was in excess of what was reasonably prudent considering all the circumstances, including the distance of the crossing from the station—some 200 feet. Evidence of witnesses called by the plain-

tiff seemed to establish that the whistle was sounded as the train approached the station, but whether the conditions called for any further signal, and whether the bell was in fact rung, were questions properly submitted to the jury.

2. The defendant claims that the evidence conclusively established that the collision was due to the negligence of Shearhart, the driver of the automobile, which should be attributed to the plaintiff because the two were engaged in a common enterprise. There was evidence to this effect: The plaintiff and Shearhart were neighbors living near Edna. Each had a car. They frequently went to town together, sometimes in one car and sometimes in the other. On the day of the accident Shearhart was going to town and asked the plaintiff to go with him. The plaintiff had some produce he wanted to take in, and accepted the invitation on that account. They reached Edna in the morning and stayed there until four or five o'clock in the afternoon, when they started home, the collision occurring while they were still in town. We do not think the evidence conclusively proved that the two were engaged in a common enterprise in such sense as to make the plaintiff chargeable with the negligence of Shearhart. That question was one to be left (as it was) to the jury under proper instructions.

3. Under various assignments of error the defendant urges that judgment should be rendered against the plaintiff on the ground that his own personal negligence contributed to the injury. The rule is well settled that due diligence on the part of the driver of a vehicle requires him to assure himself that no train is approaching within a dangerous distance before attempting to cross a railroad, stopping for that purpose if necessary. The defendant takes the position that in the present situation the same obligation rested upon the plaintiff. We do not think it can be said as a matter of law that the plaintiff was negligent in failing to see to it that the automobile was stopped, assuming that to have been true of the driver.

4. The plaintiff, however, was under a positive duty to take reasonable precautions for his own safety. Whatever else this may have involved, it required him to keep an outlook for a train, particularly on his side of the car, and to give the driver notice as soon as he discovered one. (*Knight v. Railway Co.*, ante, p. 308, 206 Pac. 893; *Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744.) As the two drove south on the principal street toward the rail-

road, which crossed it at right angles, their view to the west, from which direction the train was coming, was cut off to a considerable extent by various obstructions, the last of which was the section house, situated at its nearest point approximately 125 feet west of the middle of the street and 19½ feet north of the middle of the railroad track. This distance refers to the main part of the building—the house itself; a small porch, consisting of a floor and a roof supported by three posts extended several feet to the south, but could not completely cut off the view up the track. The plaintiff was on the front seat at the right of the driver. He testified that he was looking west all the while but saw the train for the first time when he was 10 or 12 feet from the track and at once called to the driver to look out; that the reason he didn't see it when he was 25 feet from the railroad was on account of the section house and a curve in the track. In one instance he spoke as though the train when he first saw it was but 100 feet away, but the effect of his whole testimony is that the distance was about twice that.

If the plaintiff's account is correct this must be what happened: While he was 25 feet from the track he could and did see along it to the west for 200 feet—the extent to which it was visible—but did not see the train because it was not yet within that distance; he kept on looking but the train did not come in sight—did not reach his field of vision along the track—until he was within 10 or 12 feet of the track, when owing to the imminence of the peril he could do nothing more than to warn the driver. This version attributes what seems a most improbable speed to the train, but we cannot say it is impossible, or that if it is true the plaintiff was guilty of contributory negligence as a matter of law. Therefore judgment upon the evidence cannot be rendered against the plaintiff.

5. However, we think the defendant's motion for a new trial should be sustained, for these reasons: The plaintiff's case rests upon the theory that at a distance of 25 feet from the track he could only see a train approaching from the west if it was within 200 feet. He testified that at that distance he could see no further up the track because of the section house and because of the curve in the track. By a plat drawn to a scale the section house is shown to be about 125 feet west of the middle of the street and 19½ feet north of the middle of the track. It is manifest that if these measurements are correct, and they are supported by the other

Kessler v. Davis.

evidence, a train coming from the west could be seen in spite of the section house at a distance of something like 500 feet if the track is straight. There was no testimony as to just where the curve began, but the plat, which covers over 500 feet west of the street, does not show it. The plat of course is not to be regarded as infallible, but in the absence of any other actual measurements in conflict with it we do not think a judgment inconsistent with it should be allowed to stand, the matter being one capable of. exact determination. The jury in answer to a special question found that the occupant of an automobile when he was 25 feet north of the track had an unobstructed view along the track to the west for about 200 feet. In view of the issues involved this must be interpreted as meaning that when 25 feet from the track he could not see an approaching train until it was within 200 feet of him. It cannot be said that the finding was wholly without support in the evidence, for it corresponded with the plaintiff's estimate, but it was in conflict with the plat, against which no actual measurements were offered. Moreover, the plaintiff's statement was that at that distance the curve cut off the view, when there was no substantial evidence of a curve within that distance. A photograph was introduced, looking west from the crossing up the main track, showing a freight train approaching on the passing track to the south, the rear cars of which show a curve to the north. But the engine itself is standing about 200 feet west of the middle of the street, and while the length of the train of course cannot be closely estimated in such a picture it is evident that the curve does not begin for a considerable distance beyond the 200 feet fixed by the jury as the limit of vision from a point 25 feet north of the track. The special finding shows expressly that the jury reached a conclusion (which would necessarily have been implied from the general verdict) that was in conflict with the only actual measurements submitted, upon vital matters that are capable of being ascertained beyond any doubt. In this situation we cannot feel that the judgment should be allowed to stand.

6. The defendant submitted ten special questions. One of them called for the distance the occupant of an automobile could see. west up the track when he was distant from it 25 feet, 50 feet and 75 feet. The court treated this as three questions and refused to submit more than ten on that basis. The defendant then eliminated the question so far as concerned the 50 and 75 feet, and complains

of being required to do so. The jury having fixed 200 feet as the limit of vision from a distance of 25 feet, their estimate of the limit from the other distances being necessarily less became practically immaterial for the purposes of this trial.

Questions that have been raised with respect to instructions given and refused are practically disposed of by what has already been decided under other assignments.

The judgment was for $20,000. The defendant urges that the amount is excessive, and it appears to be very large; but inasmuch as a reversal is ordered upon other grounds it is not necessary to rule upon this question.

The judgment is reversed and the cause is remanded for a new trial.