No. 25,717.

VESTA BESSIE COOPER, *Appellee, v.* THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Accident at Railroad Crossing—Failure to Maintain Statutory Crossing Over Public Highway—Company Not Liable Unless Its Failure Was The Proximate Cause of the Injury.* Before a violation of statutory specifications touching the maintenance of a railway crossing over a public highway can form a basis for the railway company's liability in damages for the death of a person killed at such crossing, it must be made to appear that the defective character of the crossing was the proximate cause of the accident.

2. SAME—*Duty of Person in Automobile About to Cross a Railroad Track— "Stop Look and Listen."* Rule followed that where one is about to cross a railway track and obstructions to his sight and hearing prevent him from assuring himself that no train is approaching, it is negligence for him to risk his life by attempting to cross without otherwise ascertaining that it is safe to do so.

3. SAME—*Duty to Observe Railroad Crossing Signboard and Visible Evidence of Proximity to Railroad Crossing.* Where a railway crossing signboard or other evidence of the proximity of a railway crossing is plainly visible to a person in an automobile on the highway, such person is chargeable with notice thereof, and must govern his conduct accordingly in the interest of his own safety.

4. SAME—*Contributory Negligence of Deceased Established.* The facts not in dispute, and a controlling finding of the jury considered and held to establish contributory negligence on the part of a husband killed at a railway crossing over a public highway, and to bar a recovery against the railway company in favor of the surviving spouse.

Appeal from Smith district court; WILLIAM R. MITCHELL, judge. Opinion filed February 7, 1925. Reversed.

*Luther Burns, J. E. DuMars,* both of Topeka, and *L. C. Uhl, Jr.,* of Smith Center, for the appellant.

*A. W. Relihan, T. D. Relihan,* and *J. T. Reed,* all of Smith Center, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages for the alleged negligent killing of plaintiff's husband.

The tragedy happened on December 8, 1921, about 11:30 o'clock in the forenoon, at a railway crossing about a mile east of Smith Center, where the railway runs east and west and the public high- way runs north and south. Five persons were riding southward in a Dodge touring car; J. C. Reiser was driving; Mrs. J. C. Reiser rode by his side in the front seat; W. A. Yenne, plaintiff's husband, sat on the left side of the rear seat, and with him sat Jeff Yenne and Mrs. Jeff Yenne. They had left their homes, some fourteen miles northeast of the crossing, about 10:30 a. m., and were going to a public sale two or three miles southeast of Smith Center. As their car was going southward over the crossing it was struck by defendant's westbound passenger train, and Reiser, W. A. Yenne, Jeff Yenne and Mrs. Yenne were killed. Mrs. Reiser survived and was a witness at the trial.

The plaintiff charged the railway company with negligence in failing to construct and maintain the crossing as required by law; that the crossing was only 16 feet wide; that the grade approaching the crossing was steeper than permitted by the statute, and that the grade continued up to the rails with no level ground immediately north of the railway track.

Defendant's answer contained a general denial, and alleged that plaintiff's husband's death was caused by his own negligence and that of Reiser, the driver of the automobile, and that he and Reiser were engaged in a common enterprise.

The pleadings of both plaintiff and defendant contained other allegations of fact, which so far as necessary will be considered in connection with the evidence pertaining thereto.

Jury trial; verdict for plaintiff for $2,500; special findings, in part, as follows:

"Q. No. 3. Was the crossing sign bearing the words 'Railroad Crossing' in the shape of an 'X' on a post in place and visible to travelers on the highway traveling from the north? A. Yes.

"Q. No. 4. Were the railroad track and wing fences of the cattle guards plainly visible to one approaching the crossing in an automobile from the north? A. No.

"Q. No. 5. At what rate of speed was the automobile in question traveling while approaching the railroad crossing? Miles per hour.

    (a) When 50 feet from the crossing?.......................... 12

    (b) When 25 feet from the crossing?......................... 8

    (c) When upon the crossing?................................. 8

Cooper v. Railway Co.

"Q. No. 6. At what distance from the crossing could the train have been seen by W. A. Yenne when on the highway?

    (a) 113 feet from the crossing?  We do not know.
    (b)  75 feet from the crossing?  We do not know.
    (c)  50 feet from the crossing?  We do not know.
    (d)  40 feet from the crossing?  We do not know.
    (e)  25 feet from the crossing?  We do not know.

"Q. No. 7. If you find that the defendant was negligent in one or more of the acts alleged in the petition, then did such act or acts of negligence proximately contribute to or cause the injury?  A. Yes.

"Q. No. 8. If in answer to the next foregoing question you find the defendant was negligent, then state specifically in what such act or acts consisted?  A. That defendant's railway was very rough, steep, narrow, unlawful, and an approaching train from east is not visible when automobiles are ascending grade from the north until within a few feet of the rails.

"Q. No. 9. Did W. A. Yenne at the time and at all times prior to the accident use such care for his own safety as an ordinarily prudent person would have used under the same or similar circumstances?  A. Yes."

The jury were directed to return a fuller answer to question No. 8, and complied as follows:

"Ans. to Q. 8. That the approach to the defendant railway was very rough, steep, narrow, unlawful and an approaching train from the east is not visible when automobiles are ascending grade from the north until within a few feet of the rails."

Defendant moved that the jury be required to answer question No. 6, moved for a new trial, and moved to set aside the answers to questions 4 to 9, inclusive. These motions were denied, and judgment was entered for plaintiff.

Several errors are assigned, around which defendant centers two main contentions—that the evidence failed to show that the railway company was guilty of any negligence which brought about the death of W. A. Yenne, and that the evidence did show that there was contributory negligence on the part of the deceased.

As all other allegations of negligence charged against the defendant were eliminated by the special findings of the jury (*Roberts v. Railway Co.*, 98 Kan. 705, 161 Pac. 590), let us first notice that the negligence of the railway company as found by the jury lay in the defective character of the crossing.  The findings read:

[First] "Ans. to Q. 8. That defendant's railway was very rough, steep, narrow, unlawful, and an approaching train from east is not visible when automobiles are ascending grade from the north until within a few feet of the rails.

[Second] "Ans. to Q. 8. That the approach to the defendant railway was

45—117 Kan.

very rough, steep, narrow, unlawful and an approaching train from the east is not visible when automobiles are ascending grade from the north until within a few feet of the rails."

The statutory requirement as to railway crossings over rural township highways is that unless the board of county commissioners finds it unnecessary, the railway company must maintain in good repair a crossing twenty feet in width, of the same grade as the railway track for thirty feet on each side of the rails, and the approaches thereto shall not exceed six per cent grade, and special requirements are made for the filling of the space between the rails. (R. S. 66-227.)

The plaintiff's evidence tended to show that these statutory requirements had not been met, nor had the county commissioners found them to be unnecessary at this particular crossing. So, of course, the negligence of the defendant in failing to comply with the statute was established. But to fasten liability upon the railway company it was not enough to show that the railway company had failed to comply with the statute touching the character of crossing maintained by it on this highway. It was necessary to show that defendant's failure and neglect to construct and maintain this crossing in accordance with the statutory standard was the proximate cause of the accident which brought about the death of W. A. Yenne. (*Williams v. Electric Railroad Co.*, 102 Kan. 268, and citations, 170 Pac. 397; *Carson v. Railway Co.*, 103 Kan. 138, 172 Pac. 1000; Note to *Shatto v. Erie R. Co.*, 59 C. C. A. 5, 10, 19.)

Now it is very difficult to see how the defects of the crossing had anything to do with causing the accident. The defects were comparatively slight. The jury found the approach was very rough, but there was no evidence to that effect. The jury found the approach was steep. It was steeper than the statutory standard of 6 per cent grade; it was about 8 per cent. The jury found that the approach was narrow; it was about sixteen feet wide. But there was no evidence that these shortcomings of the approach to the crossing presented any difficulties to the automobile and its occupants in negotiating the crossing. The jury found that the automobile approached the crossing at twelve miles an hour and was crossing the track at eight miles per hour when struck by the train. Mrs. Reiser, the sole survivor of the accident, in testifying in plaintiff's behalf, said:

"Q. Well, you went straight south on that road, did you? A. Yes, sir.

"Q. And you finally came to a railroad track, did you?  A. Yes, sir.

"Q. Now, did you see this railroad track?  A. No, sir.  .  .  .

"Q. And was Mr. Reiser driving at that time?  A. Yes, sir.

"Q. About how fast was he driving?  A. Well, I don't know just exactly, but I think not more than fifteen miles per hour.

"Q. That is your judgment of it?  A. Yes, sir.  .  .  .

"Q. Now, this car, was it in good running order?  A. The automobile, you mean?

"Q. The automobile?  A. Yes, sir.

"Q. It didn't have the appearance of being out of order in any way as far as running is concerned?  A. No, sir.  .  .  .

"Q. Do you, or do you not, remember of going up an incline just before going onto the track?  A. Yes, I remember going up a slope.  .  .  .

"Q. Had you driven faster than fifteen miles an hour as you were coming from this corner that you testified to, that has been referred to as the Sam Cannon corner?  A. No, I think not.

"Q. And you continued to drive at fifteen miles an hour until the accident occurred?  A. Yes, sir."

In view of this evidence it is difficult to avoid the conclusion that the want of compliance with the statutory specifications in maintaining the crossing was not the proximate cause, nor in any sense the cause of the accident.

But without attempting to dispose of the case on the point just discussed, let us consider defendant's contention that plaintiff's husband met his death by his own contributory negligence.

The jury found (finding No. 4) that the railway track and wing fences were not plainly visible to one approaching the crossing in an automobile from the north.  There was no want of evidence to justify a different answer to this question.  Perhaps the occupants of the car did not actually see the rails and ties as they approached the crossing; but Doctor Relihan, witness for plaintiff, testified that coming from the "Cameron corner," a quarter of a mile north of the crossing, the cattle guards painted white were plainly visible, and that the railway embankment stretching westward from the crossing was plainly to be seen.

The testimony of Jones, another witness for plaintiff, in part reads:

"Q. Now, when you are up at this Cannon (Cameron) corner, looking southward, you can see the railroad crossing from that point, can't you, a quarter of a mile distant?  A. Yes, sir.  .  .  .

"Q. Tell the jury, please, what you see from the Cannon (Cameron) corner as you turn south.  A. As you turn south?

"Q. Yes, sir. A. Well, you can see the railroad track, you can see the cattle guards and the fill on the west side of the road.

"Q. You also see the crossing sign bearing the words 'Railroad Crossing'? A. Yes, sir; I think so; I am sure so."

The testimony for the defendant was to the same effect, but of course we can attach little or no weight to the latter, as the jury might have discredited it. Indeed, the jury might have disbelieved the plaintiff's witnesses Relihan and Jones, if there had been any evidence to the contrary which would have supported a negative answer to question No. 4. But the fact of the visibility of the railway—the large crossing signboard, the white-winged cattle guards, the railway embankment stretching westward, and the line of telegraph poles—were not only established by evidence elicited from plaintiff's witnesses, with no evidence to the contrary, but the record contains a panoramic photograph, defendant's exhibit 1, whose accuracy is unchallenged; which demonstrates that it was impossible for passengers in a Dodge touring car not to see the railway if they were giving the slightest heed to what was to be seen for a quarter of a mile ahead of them as they traveled southward on the highway towards the crossing. The jury did find (answer No. 3) that the large crossing signboard, bearing the words "Railway Crossing" in the shape of an X on a post in place at the railway crossing, was visible to southbound travelers on the highway; but it is rather apparent that there is a want of candor in the jury's answer to question 4, which was also propounded to elicit the fact that there were other visible evidences of the existence and location of the railway in addition to the crossing signboard, which the deceased and his fellow passengers were bound to have seen if they had been giving due regard to their own safety.

The jury also found that "an approaching train from the east is not visible when automobiles are ascending grade from the north until within a few feet of the rails." (Finding No. 8.)

There was much testimony and rather persuasive photographic evidence tending to prove that at any point from 25 feet to 100 feet north of the railway track there was nothing to prevent a person in an automobile from seeing an approaching train 150 yards to 1,000 feet away; and it is very doubtful, indeed, if there was any evidence to justify the jury's finding; but whether it was supported by any evidence or not, the law is that when a person is approaching a railway crossing over a public highway and there

are obstructions to his view, so that he cannot tell for sure by merely looking or listening that no train is coming, he cannot go ahead and cross, taking a blind chance as to his safety. In such a situation the duty of self-preservation requires that before attempting to cross he must stop and ascertain whether or not a train is approaching from behind the obstruction which shuts off his vision. (*Wehe v. Railway Co.*, 97 Kan. 794. 156 Pac. 742.)

In *Rathbone v. Railway Co.*, 113 Kan. 257, 215 Pac. 109, the action was much like the case at bar. A woman riding with her son in an automobile over a railway crossing on a public highway was killed by a railway train. The plaintiffs charged and the jury found that the railway company was guilty of negligence in the condition of the crossing. There were some obstructions to the view of an oncoming train at the approach to the crossing on the public highway. The railway company relied chiefly on a defense of contributory negligence. This court said:

"But notwithstanding defendant's negligence in the way it maintained the crossing, it was incumbent upon Emmett and Bessie Rathbone, before they attempted to cross the railway track where their vision was shut off by obstruction, to ascertain positively that no train was approaching and that they could safely cross. This they did not do. . . . It is settled law in this state that it is negligence to atempt. to cross a railroad track ahead of a speeding train, even in a case where but for a defective crossing the party making such foolhardy attempt would have escaped unscathed by a few ticks of the clock. (*Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac. 801.)" (pp. 259, 260.)

And while the duty of a passenger in an automobile to look out for possible dangers ahead is not precisely the same as that of the driver, he is equally under the duty of looking out for his own safety as far as practicable. He is expected to see dangers which are obvious and to warn the driver of them. (*Fair v. Traction Co.*, 102 Kan. 611, 171 Pac. 649; *Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744; *Knight v. Railway Co.*, 111 Kan. 308, 206 Pac. 893; *Kessler v. Davis*, 111 Kan. 515, 207 Pac. 799.) And if the driver is disposed to be heedless of his own safety and that of his passengers, and disregards their protests against his want of care, they should demand that they be permitted to leave the vehicle which is carrying them into danger. (*Sharp v. Sproat*, 111 Kan. 735, 208 Pac. 613; *Naglo v. Jones*, 115 Kan. 140, 222 Pac. 116.)

Applying these settled principles to the controlling facts about which there can be no cavil in this case, and excluding altogether

those features of the case where there may be some controversy over
the facts, and without attempting to convict the jury of downright
insincerity in its answer to question No. 4 and in its failure to
answer question No. 6, the jury's finding in response to question
No. 3 reduces this appeal to very narrow limits. The jury found
that the railway-crossing signboard was plainly visible to one ap-
proaching the crossing in an automobile from the north. So W. A.
Yenne could have seen that crossing signboard if he had looked.
The survivor, Mrs. Reiser, testified that her husband was a very
careful driver, and that it was his custom and also hers to keep a
sharp outlook ahead for railway crossings, but that neither she nor
her husband noticed this crossing. That merely goes to show that
in this instance these unusually cautious people were off their
guard. The signboard was plainly visible. They could have seen
it. There was nothing to prevent W. A. Yenne in the rear seat from
seeing the crossing sign, and the rule of law is that he is chargeable
with notice of whatever warning signs on the highway were plainly
to be seen by those whose duty it is to be on the outlook for them.
Yenne was a man of ordinary stature; Reiser, the driver, who rode
in front of him, was an unusually small man. Yenne's vision ahead
was not shut off, and the slits in the side curtains were ample for
him to see whatever was to be seen on the left side of the car, and
if the lay of the land or other obstructions prevented him from
assuring himself that no train was approaching, it was his elemen-
tary duty to himself to warn the driver. This doctrine has been so
often expounded by this and other courts that it is the veriest com-
monplace. In *Kirkland v. Railway Co.*, 104 Kan. 388, 179 Pac. 362,
it was held that it was contributory negligence for persons to cross
a railway track in front of an approaching train "which they could
have seen if they had looked."

In *Knight v. Railway Co.*, supra, it was held:

"A mature person who attempts to cross a railroad track without taking
any precautions for his own safety, while riding in an automobile with another
who is driving, cannot recover damages from the railroad company for in-
juries sustained in a collision with a car on the track, when by looking he could
have seen the approaching car in time to have warned the driver of the danger.
(*Kirby v. Railway Co.*, 106 Kan. 163, 186 Pac. 744, followed.)" (Syl.)

In *Kessler v. Davis*, 111 Kan. 515, 517, 207 Pac. 799, it was said:

"The plaintiff, however, was under a positive duty to take reasonable pre-
cautions for his own safety. Whatever else this may have involved, it re-
quired him to keep an outlook for a train, particularly on his side of the car,

and to give the driver notice as soon as he discovered one. (*Knight v. Railway Co.,* ante, p. 308, 206 Pac. 893; *Kirby v. Railway Co.,* 106 Kan. 163, 186 Pac. 744.)"

In *Rathbone v. Railway Co.,* 113 Kan. 257, 261, 215 Pac. 109, it was said that even if the deceased had been riding as a guest, "she was bound to look out for herself as far as practicable."

In *Holman v. Railway Co.,* 113 Kan. 710, 712, 215 Pac. 1111, it was said:

"Under rules of logic frequently applied by this court, it is often held in crossing-accident cases that testimony and findings that a person had looked before crossing a railway track and saw no train approaching must be disregarded because manifestly untrue, since if the person looked he must have seen whatever was within reasonable range of vision to be seen."

And so here. If plaintiff's husband had looked ahead at any time after the automobile turned south at the Cameron corner, a quarter of a mile away, he could not have failed to see the railway crossing signboard warning him that he was riding into danger. (*Limbaugh v. Schaff, Receiver,* 114 Kan. 24, 27, 217 Pac. 279.) It thus appears that the failure of the deceased to see the railway crossing signboard and to warn the driver of the automobile under the circumstances constituted contributory negligence as a matter of law, and this requires that the judgment be reversed with direction to enter judgment for defendant.

It is so ordered.