No. 41,489

MIKE REDA, JR., *Appellee*, v. MORRIS LOWE, *Appellant*.

(342 P. 2d 172)

Opinion filed July 10, 1959.

*Herman W. Smith, Jr.,* of Parsons, argued the cause, and *Elmer W. Columbia* and *John B. Markham,* also of Parsons, were with him on the briefs for appellant.

*Charles E. Henshall,* of Chanute, argued the cause, and *Paul L. Wilbert* and *Pete Farabi,* both of Pittsburg, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a negligence action for damages arising out of an intersection collision between two trucks on the 17th day of October, 1955, in Neosho County, Kansas.

The primary question presented is whether the plaintiff's evidence establishes contributory negligence as a matter of law.

The plaintiff, Mike Reda, Jr., in his amended petition seeks damages for personal injuries to himself and for damages to his truck alleging negligence on the part of the defendant. The defendant, Morris Lowe, by his answer denies generally the allegations of the plaintiff's petition and pleads contributory negligence of the plaintiff as a defense. He further cross-petitions seeking damages for the permanent injuries to himself and for damages to his truck alleging negligence on the part of the plaintiff.

With issues joined the case was tried to a jury and resulted in a verdict for the plaintiff and against the defendant in the sum of $7,715.25 with interest and costs. The defendant appeals.

The intersection in question is formed or embraced within the prolongation of the lateral boundary lines of two gravel roads which adjoined U. S. Highway No. 59. This highway approaches the intersection in question from the south and leads from the intersection in question to the west. The highway itself is blacktop and the distance from the blacktop highway, which curves around the corner, to the entrance of the intersection in question from both the south and the west is approximately 100 feet. The gravel roads forming the intersection were approximately of equal width and were described as from 18 to 20 feet in width.

The plaintiff's evidence, which consists solely of the plaintiff's testimony insofar as the record before this court discloses, indicates that he was 55 years of age at the time of the accident and engaged in the business of distributing beer with a place of business at Pittsburg, Kansas. At approximately 5:30 p. m., on October 17, 1955, the plaintiff was traveling east on U. S. Highway No. 59 approaching the intersection in question. The visibility was good, the day clear and the road dry. At this particular time and place the plaintiff approaching the intersection at about 25 miles per hour did not follow the blacktop highway which curved around the corner and went to the south, but proceeded directly east off the blacktop and into the gravel intersection. The plaintiff testified that as he started into the intersection the defendant's pickup truck approaching from the south on the blacktop highway toward the intersection "flew over the black top" coming at "a terrible speed" which was described by the plaintiff in his testimony at different speeds rang-

ing from 50 miles per hour to 80 miles per hour. He related that the two front wheels of the defendant's truck left the ground something like one and one-half feet. He testified:

". . . I was about the center of the intersection; I gave him the horn to bring attention to him, and proceeded ahead as I was already past the intersection, and at a little bridge, east, I felt the bump; it struck and it threw me against the bridge on the north side and as my truck came loose, his spun around behind me, . . ."

The plaintiff further testified that he had entered the intersection first and had just gotten through the intersection; that the defendant did not hit him going straight but curved with the plaintiff who was across the intersection.

At the close of the plaintiff's testimony the defendant demurred to the evidence on the ground that the plaintiff's evidence established that he was guilty of contributory negligence as a matter of law. This demurrer was overruled.

The defendant testified:

". . . I was going home from my work at the Union Elevator at the time of the collision. I was traveling on the black top about 35 miles per hour. I ran off of the black top where the road curves to the left, but I slowed down because of the intersection there. I noticed a red and white truck coming from the west. He was into the curve. As I approach the corner, I looked to the east and saw nothing and by that time had run into the intersection and the truck hit mine. The Reda truck hit the front end of my truck on the left side in front of the left door. I entered the intersection first and the front of my bumper was half way across when we were struck in the center lane of the east and west road. . . ."

He further testified:

". . . I saw the Reda truck when it was on the black top. I seen him when I went on the curve. I thought he was going around 35.
"Q. That was when he was still on the black top on the curve; was he headed straight east?
"A. It looked like he turned and curved around and followed the black top.
"Q. That is when you last saw him?
"A. That is right."

He also testified:

". . . I did not honk my horn before the collision. At the speed I was going of 20 miles per hour, I believe that if I had applied my brakes at the distance of 15 to 20 feet south of the intersection I could have brought my car to a stop."

Milford Hall was following approximately one-eighth of a mile behind the defendant on the highway at the time of the collision.

He observed the collision and testified that the defendant's speed was around 25 to 30 miles per hour; that the defendant slowed his truck down to 5 to 10 miles per hour when he left the blacktop; and that these trucks came together in their own line of traffic. This would establish the point of collision in the southeast quadrant of the intersection. This witness, who was the first to arrive at the scene of the accident, further testified:

"Mr. Lowe [defendant] said to me right after the accident that he did not see the truck and Mr. Reda [plaintiff] said he saw the Lowe truck but thought it was going to stop . . ."

He further testified there was no sign that Mr. Lowe applied his brakes.

Other evidence presented by the defendant is immaterial to relate. At the close of the defendant's evidence the plaintiff demurred to the evidence of the defendant offered in support of his cross petition. This demurrer was overruled. The plaintiff then moved for a directed verdict which was also overruled.

Among the instructions given to the jury was the following:

"INSTRUCTION No. 9

"You are instructed that at the time of the collision referred to in this case there is in full force and effect the following statute of the State of Kansas:

"8-550: Vehicles approaching or entering intersections.

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right. . . .

"You are further instructed in this connection that the right of way at an intersection is not an absolute and inflexible right but a relative right. Its main purpose is to demand care of motorists commensurate with the danger of collision. The right of way and the right to assume absence of negligence by others may not be invoked by one who has violated the rules of the road himself by recklessly driving into an intersection without previously maintaining a reasonably careful lookout from places where he might have seen an approaching vehicle, in a manner which makes it impossible to avoid injury to himself and others."

The following special questions were submitted by the court and answered by the jury as follows:

"1. Did the truck driven by Mr. Reda enter the intersection before the truck driven by Mr. Lowe?

"Answer: Yes.

"2. Did Mr. Lowe see the Reda truck as it entered the intersection?

"Answer: No.

"3. If your answer to Question No. 2 is No, then what, if anything, prevented Mr. Lowe from seeing the Reda truck?

"Answer: Nothing.

"4. Do you find that Mr. Lowe was guilty of any negligence as alleged in the amended petition, which was the proximate cause of the collision?

"Answer: Yes.

"5. If your answer to the foregoing question is Yes, then state what act or acts of negligence Mr. Lowe was guilty of?

"Answer: Failure to observe truck.

"6. Where was the point of collision between the two trucks with reference to the East side of the intersection?

"Answer: Just west of east side.

"7. Do you find that each truck entered the intersection at the same time?

"Answer: No.

"8. Where, with reference to the center of the intersection was the point of impact?

"Answer: South East.

"9. Do you find that plaintiff observed defendant's truck prior to the collision?

"Answer: Yes.

"10. If you answer Question No. 9 in the affirmative, please answer the following:

"(a) Where, with reference to the center of the intersection, was defendant's truck when first observed?

"Answer: South.

"11. Please state the speed of the respective trucks when each left the black top highway and entered the gravel?

"Answer: Plaintiff's truck: 30-35 m. p. h. Defendant's truck: 30-35 m. p. h.

"12. Do you find that defendant looked both directions before entering the intersection?

"Answer: Yes.

"13. If your verdict is for plaintiff, please state of what act or acts of negligence you find the defendant guilty?

"Answer: Section A of Instruction No. 9."

Although counsel for the defendant did not move for a directed verdict at the close of all the evidence presented in the trial court (*Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295, and *Ogilvie v. Mangels*, 183 Kan. 733, 332 P. 2d 581), the defendant is entitled to a review of his demurrer to the plaintiff's evidence by reason of the plaintiff's demurrer to the evidence of the defendant, which challenged the attention of the trial court to the sufficiency of all the evidence to go to the jury (*Anderson v. Thomas*, 184 Kan. 240, 336 P. 2d 821), and also by reason of the plaintiff's motion for a

directed verdict at the close of the defendant's evidence, which likewise challenged the attention of the trial court to the sufficiency of all the evidence to go to the jury.

It has been held in ruling on a demurrer to the evidence that an appellate court does not weigh or compare contradictory evidence, but accepts all the evidence as true, gives it the benefit of all inferences that may properly be drawn therefrom, and considers only such portions thereof as are favorable to the party adducing it. To sustain a demurrer to the evidence the contributory negligence must clearly appear from the evidence introduced. (*Haga v. Moss, Administrator*, 181 Kan. 171, 311 P. 2d 281.)

In testing the sufficiency of evidence as against a demurrer, the evidence and the inferences that may be properly drawn therefrom must be considered in the light most favorable to the party against whom the demurrer is directed, and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of fair and impartial judgment, may reach different conclusions thereon, the demurrer should be overruled and the issue submitted to the jury. (*Creten v. Chicago, Rock Island & Pac. Rld. Co.*, 184 Kan. 387, 337 P. 2d 1003.)

Furthermore, if the demurrer of a defendant to the plaintiff's evidence is overruled, and he proceeds to introduce his own evidence, he may by his own evidence supply any deficiency which may have theretofore existed in the plaintiff's evidence. At the close of all the evidence, its sufficiency to go to the jury must be determined by a consideration of both the evidence introduced by the plaintiff and the evidence introduced by the defendant. (*Henks v. Panning*, 175 Kan. 424, 264 P. 2d 483; *Tuggle v. Cathers*, 174 Kan. 122, 254 P. 2d 807; *Lechleitner v. Cummings*, 159 Kan. 171, 152 P. 2d 843; *Wilson v. Holm*, 164 Kan. 229, 188 P. 2d 899; and numerous other decisions cited in West's Kansas Digest, Trial, § 418; Hatcher's Kansas Digest [Rev. Ed.], Appeal & Error, § 486, Trial § 167.)

The defendant's contention is simply that a situation exists where two automobiles are approaching one another at a wide open intersection, where each of the drivers could see the other and yet plaintiff continued to drive his truck directly and with speed unabated into the intersection, when he testified that he saw and continued to watch the approach of the defendant's vehicle coming at 75 or 80 miles per hour and coming so fast that the front wheels left the ground. The defendant's position is that this is contributory negligence as a matter of law.

The defendant relies on *Ray v. Allen,* 159 Kan. 167, 152 P. 2d 851, where the plaintiff testified that he made no effort to judge the defendant's speed and had no idea of his speed until immediately prior to the collision, and then testified: "I could have stopped but why should I stop when the right of way was mine."

The situation presented in the instant case, however, is quite different. (See *Huggins v. Kansas Power and Light Co.,* 164 Kan. 27, 187 P. 2d 491.) The plaintiff's testimony here was that he was in the middle of the intersection at the time he observed that the defendant was leaving the blacktop. Until this time he had the right to assume that the defendant was traveling on the blacktop highway, and that if the defendant left the highway he would obey the rules of the road and yield the right of way to the plaintiff because he had already entered the intersection. The operator of an automobile on a public highway may assume others using the highway will observe the laws of the road and he is not guilty of contributory negligence in such assumption unless and until he has knowledge to the contrary. (*Fry v. Cadle,* 171 Kan. 14, 229 P. 2d 724.)

We deem it unnecessary to discuss in detail the application of the above rules of law to the facts in this case. Actually, the record presents nothing more serious than controverted questions of fact. Contributory negligence is never presumed; it must be established by proof, and when the plaintiff's evidence does not disclose his own contributory negligence as a matter of law, the jury has a right to disbelieve and disregard all evidence tending to establish its existence. (*Creten v. Chicago, Rock Island & Pac. Rld. Co.,* supra.) It follows the trial court did not err in overruling the defendant's demurrer to the plaintiff's evidence.

The defendant (appellant) filed a motion for judgment upon the answers to special questions submitted to the jury "and upon the undisputed evidence in the case" notwithstanding the general verdict, which the trial court overruled. A motion for judgment *non obstante veredicto* concedes the findings are supported by evidence (*Mehl v. Carter,* 171 Kan. 597, 237 P. 2d 240, and *Lee v. Gas Service Company,* 166 Kan. 285, 201 P. 2d 1023), and admits the findings are true (*Creten v. Chicago, Rock Island & Pac. Rld. Co.,* supra). The basis for defendant's assertion that the trial court erred is that the "undisputed evidence" established contributory negligence as a matter of law. This has already been deter-

mined adversely to the defendant. A motion for judgment notwithstanding the verdict is not sustained by reason of some possible inconsistencies between the findings, but only when the special findings are contrary to the general verdict and compel judgment in favor of the movant as a matter of law. (*Mehl v. Carter,* supra.)

The defendant assigns as error the failure of the trial court to submit requested special questions to the jury. All except three were submitted by the court as requested. The record does not disclose any objection by the defendant to the special questions actually submitted, nor any objection for refusal of the trial court to submit those rejected.

A question rejected was "Do you find that each truck entered the intersection at or about the same time?" The question was rephrased by the trial court and submitted as question No. 1 and question No. 7 to clarify its meaning. As requested the question may have been misleading to the jury. Although the wording of the question in legal terminology may have been technically correct, the record does not disclose what all the trial court's instructions to the jury actually were on this point. The only instruction abstracted was No. 9.

The trial court rejected a requested special question designed to follow questions 9 and 10(*a*) which were submitted to the jury. It reads: "(*b*) Did plaintiff continue to observe and watch defendant's approaching truck at all times until after plaintiff had entered intersection?" An answer to this question is immaterial to the issues in the case. Even though it be answered in the negative by the jury it would not, standing alone, establish negligence on the part of the plaintiff. This intersection had three approaches other than the one the plaintiff was using, and he was obligated to observe traffic conditions on all approaches. At best the plaintiff, under the circumstances, was required only to be aware of the defendant's position with respect to the highway and the approach to the intersection *at all times* after he first observed the defendant some distance to the south on the highway until after he (the plaintiff) had entered the intersection. This did not require the plaintiff to *observe and watch* the defendant's approaching truck *at all times.*

The other special question the trial court refused to submit to the jury was: "What, if anything, did plaintiff do to avoid the collision?" This question is too vague and indefinite. By gen-

eralizing it fails to take any of the circumstances into consideration relative to the position of the plaintiff traveling in his vehicle and the time concerning his behavior in relation to the position of the vehicle driven by the defendant.

A trial court has wide discretion respecting special questions to be submitted to the jury, and when it appears the questions are not pertinent to the issues, nor supported by the evidence, nor intended to bring out some ultimate fact in the case, it is proper to refuse to submit them. It is the duty of the trial court to supervise and shape the special interrogatories that are submitted to the jury, and it may reject questions that are improper, misleading or immaterial and limit the questions to ultimate facts on controverted issues. (*Kurdziel v. Van Es,* 180 Kan. 627, 306 P. 2d 159; *Colin v. DeCoursey Cream Co.,* 162 Kan. 683, 178 P. 2d 690; *Finke v. Lemle,* 173 Kan. 792, 252 P. 2d 869; and *Snyder v. Eriksen,* 109 Kan. 314, 198 Pac. 1080.) The trial court cannot be said to have erred in its refusal to give the above special questions requested by the defendant.

It is argued the trial court duplicated special questions numbered 5 and 13. The defendant argues what the trial court actually intended was to submit a question concerning the plaintiff's contributory negligence in one of these questions which was entirely omitted from the special questions submitted to the jury. Actually questions No. 4 and No. 5 should be considered together. Question No. 13 is precisely question No. 8 requested by the defendant. In reconciling Nos. 4, 5 and 13 together the defendant was negligent in not seeing the plaintiff's truck and in not yielding the right of way to the plaintiff who had entered the intersection first.

This point is not properly before the court, since the defendant did not object to special question No. 13 and must be deemed to have waived it (See *Banbery v. Lewis,* 173 Kan. 59, 244 P. 2d 202), nor was this point argued before the trial court on the defendant's motion for a new trial. (*Butts v. Kan. Power & Light Co.,* 165 Kan. 477, 195 P. 2d 567, and see *Place v. Kansas State Highway Commission,* 174 Kan. 296, 255 P. 2d 1004.)

Further complaint is made by the defendant that the trial court erred in failing to require the jury to return to the jury room and give a more definite answer to special question No. 13. Resort to instruction No. 9 clearly indicates what the jury's answer to ques-

tion No. 13 was and it required no further clarification. This answer was in harmony with the answers to the other special questions.

The defendant in his brief recognizes this to be a typical "fact" case, but contends that each of the cumulative errors specified, though minor in nature, when considered together in view of the plaintiff's testimony, shows that substantial justice has not been done and that a new trial ought to be granted. He argues the answers to the special questions disclose the jury did not believe the plaintiff's testimony on a number of important points; that by reason thereof the jury misunderstood its duty and the instructions; and that it failed to find contributory negligence of the plaintiff because the trial court refused or neglected to submit to it the necessary questions to determine the plaintiff's contributory negligence.

We find nothing in the record, or in other contentions advanced by the defendant respecting his claims of error not herein specifically referred to, which would permit or warrant the granting of a new trial. The judgment of the trial court is affirmed.