No. 41,509

THE CITY OF OSAWATOMIE, a Municipal Corporation, *Appellee*, v.
J. A. SLAYMAN and ETHEL SLAYMAN, *Appellants*.

(347 P. 2d 405)

Opinion filed December 12, 1959.

*Karl V. Shawver, Jr.,* of Paola, argued the cause, and *Karl V. Shawver,* of Paola, was with him on the briefs for the appellants.

*Willis H. McQueary,* of Osawatomie, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is a second appeal in the same case. In the first appeal, which was brought by defendants, this court determined the trial court had committed reversible error in refusing defendants' timely request for a jury trial. (*City of Osawatomie v. Slayman,* 182 Kan. 770, 774, 323 P. 2d 910.) As a result of the subsequent jury trial, a verdict and judgment were entered for the city and defendants again appeal.

We shall briefly summarize an agreed statement of facts. The petition truly alleged incorporation of the city, and residence and post office address of defendants; that the city could legally prevent and remove obstructions in its alleys; the city had laid a ten inch sewer near the center of block eighty-nine from east to west; in

August, 1956, defendants erected a building twenty feet long, north and south, and ten feet wide, east and west, on the south portion of lot ten, block eighty-nine; there was a space of nine feet and eight inches between the south wall eaves and heater vent of defendants' building and lot eleven, and the building is still so located although the city notified defendants to remove it; so far as lots nine and ten, block eighty-nine are concerned, the original plat of the addition, which plat is still in full force, shows no alley was therein dedicated, nor has one since been dedicated.

The chain of title to lots nine and ten was stipulated to have been:

April, 1906—Pringles to W. H. Campbell
February, 1907—Campbells to Meyer
May, 1908—Meyer to Belle Reynolds
August, 1914—Reynolds to H. S. Carsten
July, 1924—H. S. Carsten to Fred Carsten
September, 1935—Fred Carsten to Loyd Craig
March, 1936—Craig to H. G. Roethel
April, 1946—Roethel to defendants.

The above grantors and the defendants paid all taxes due up to the time of the filing of this action.

The superintendent responsible for streets and alleys of the city testified a sewer main had been in the alley since 1909 and no one had questioned the city's right to maintain it; telephone and gas lines also were in the alley and the city had cut weeds therein; defendants had asked the city governing body to close the alley in August, 1956, when they erected the building in question.

A paving contractor employee had lived in the city for fifty years and he testified that when Sixth street was paved, turn-ins were provided for the alley way.

H. G. Roethel, former owner of lots nine and ten, had assumed the lots were 150 feet deep; he thought there was an alley and had built a coal shed on the alley; coal trucks had to come down the alley to load his coal shed.

A former teamster and local contractor had owned lot eight and resided on lot ten for ten years prior to 1944 or 1945; the alley was used by the general public at that time; from about 1915 or 1916 he had driven his team up and down the alley and no one had tried to stop him; the alley had been open ever since; a fence had been along the south line of the alley for a good many years.

A feed and coal hauler who drove both a team and truck had used the alley; he testified that two or three times a day while driv-

ing a team he had used the alley, and when there was fresh paving on Pacific street he had used the alley; in later years the alley was used less because "you couldn't get through"; for years there were fences along the alley which were set back.

The city clerk stated several ordinances had been adopted wherein reference was made to the "alley" in block eighty-nine; that on two occasions defendants had asked the city to close the alley; at a property owner's request, a sewer line was laid in the alley.

The local manager for the Gas Service Company testified the company had a gas main in the alley although the company had no easement from any of the property owners; he assumed there was an alley.

A telephone company employee testified there was a telephone line in the alley; that between 1942 and 1957 he had on occasions driven a telephone company truck down the alley.

A city trash and garbage hauler had lived in Osawatomie for sixty-three years; in the early days he had driven a team through the alley many times; he had never asked permission to do so nor had anyone ever questioned his right so to do; he had gone down the alley while hauling trash and garbage for the city, but for about the last ten years the trash had been set out in front of the property and he had not been through the alley.

Another witness, a railroad employee since 1910, was familiar with block eighty-nine; he had always thought there was an alley there; in his former employment he had driven up and down the alley with a grocery wagon. A witness who had lived in Osawatomie approximately fifty-three years said he had driven an ice truck down the alley and that earlier as a school boy he had walked up and down the alley on the way to school.

The commissioner of streets and public utilities had seen traffic in the alley and had ridden in a wagon in the alley. He further corroborated evidence of defendants' two requests to the city to close the alley. He recalled there had been a fence on the north and south sides of the alley.

The mayor corroborated the greater portion of the testimony of the foregoing witnesses and added that the railroad team track was at the west end of block eighty-nine and that the teamsters used the alley to get to those tracks.

Defendants' first witness, Edgar Campbell, stated that Mr. Pringle,

a former owner, had put a pole across the entrance of the alley and the city marshal had been sent to open up the entrance; the witness knew of the entrance to the property as a private drive although others called it an alley. The next defense witness, Hugh Campbell, who apparently was related to Edgar Campbell, testified as to the private drive feature and stated that anyone driving thereon did so as guests of the owners.

The remaining eight witnesses, including defendants, testified for the defense to the point that there was some sort of passageway but it was swampy, full of high weeds, cattails, and underbrush—like a forest. They said the passageway was impassable and they had not noticed trucks using it except the entranceway thereto.

Defendant John A. Slayman stated that he had moved the building in question on the basis of an abstractor's certificate that the Miami county commission had never vacated any part of lots nine and ten, block eighty-nine. After receiving notice from the city to remove the building, he had asked the governing body of the city to vacate the alley.

The trial court in substance instructed the jury that even though the re-survey of the city was defective, an alley may be established if the public acts upon the claim under the defective re-survey and uses the land as a public alley for more than fifteen years. The fact that defendants and their grantors had paid all taxes, while not a controlling circumstance, is one of the means by which ownership of realty is asserted. The payment of taxes will not prevent the public from claiming a portion thereof for a public purpose such as a street or alley. A public way may be established by prescription by fifteen years' adverse possession if during the time the public openly, notoriously, and adversely uses the land against the landowner's will. Use by the owner's permission will not ripen into adverse possession no matter how long used. If the jury determined that the public, for any fifteen year period, had openly, notoriously, and adversely used the strip of land for a public way, it would be an alley, which, when once established, would remain an alley whether maintained for traffic or not. The sewer, gas line, and telephone poles and lines in the strip of land would not establish an alley but might be considered as evidence as to whether the public used the strip as an alley. A public way is established by prescription when under a void proceeding the owner of the land recognizes the way described in the void proceeding and sets it aside for public

use and the public accepts and uses it as such, and if landowners in block eighty-nine, following the void survey, did set back fences and buildings with the intention that the strip be used by the public for an alley, and the public did so use it, it became an alley and the jury should find for the plaintiff. Defendants were bound by any impairment of title as it existed at the time of their purchase and the city's claim of an alley would be included therein. An alley *may* be established in different ways: by purchase; by dedication; or by condemnation; but this alley was not established by any one of these three ways.

No objections were made to these instructions. Defendants had requested some instructions but they were substantially included in the trial court's instructions.

The jury returned a general verdict in favor of the city—that the alley existed and defendants should remove the building—and also answered special interrogatories:

"1. Did the property owners on each side of the proposed alley in Block 89 build fences and buildings back sufficient distances to leave a traveled way of approximately 14 feet? A. Yes.

"2. If your answer to question number 1 is in the affirmative, were the fences and buildings so located with the intention that the space should be used as a public way? A. Yes.

"3. Did the public use this space as a public way? A. Yes.

"4. If used by the public, for what period of time was it so used? A. Yes."

No objections were made by either party to the special questions or answers thereto.

The defendants had submitted five special questions but they were either improper or were included in those asked by the trial court. A trial court has wide discretion respecting special questions to be submitted to a jury and it is the duty of the trial court to supervise and shape the special interrogatories that are submitted to the jury, and it may reject questions that are improper, misleading or immaterial and limit the questions to ultimate facts on controverted issues. (*Reda v. Lowe*, 185 Kan. 306, 314, 342 P. 2d 172.)

The trial court entered judgment on the jury's verdict and ordered defendants to remove the building within thirty days from November 5, 1958.

Defendants' motions for new trial and for judgment *non obstante veredicto* were overruled by the trial court, and they timely filed a notice of appeal from the judgment, from the orders overruling

their motions for new trial and for judgment *non obstante veredicto*, and from trial errors.

Defendants' first claim of error as to instructions will not be considered further because, as previously stated herein, defendants' requested instructions were substantially included in the instructions given and no objections were made at the time they were given. (G. S. 1949, 60-2909, *Fifth*; *Foley v. Crawford*, 125 Kan. 252, 262, 263, 264 Pac. 59; *Jukes v. North American Van Lines, Inc.*, 181 Kan. 12, 309 P. 2d 692.)

The second claimed error is the trial court's refusal to submit defendants' requested special questions but this contention has already been answered above. See, also, *Sharp v. Pittsburg Coca Cola Bottling Co.*, 180 Kan. 845, 849, 850, 308 P. 2d 150.

The third claim of error is the trial court's overruling of defendants' motion for judgment *non obstante veredicto*. Under G. S. 1949, 60-3119, such a motion reaches only the pleadings and verdict; it does not raise questions as to the sufficiency of the evidence. (*Ogilvie v. Mangels*, 183 Kan. 733, 332 P. 2d 581; *In re Estate of Rogers*, 184 Kan. 24, 334 P. 2d 830.) In *Reda v. Lowe*, supra, p. 312, it was stated that a motion for judgment *non obstante veredicto* concedes the findings are supported by evidence, and later at page 313 of the same opinion, it was further stated that such a motion is not sustained by reason of some possible inconsistencies in the findings, but only when the special findings are contrary to the general verdict and compel judgment in favor of the movant as a matter of law. A comparison of the answers to special questions with the general verdict in our present case shows them to be in harmony with the verdict and with each other. Thus the trial court properly overruled this motion of defendants. In connection herewith, see also *Grigsby v. Jenkins*, 183 Kan. 594, 331 P. 2d 284.

The final claim of error was based on the trial court's overruling of defendants' motion for new trial. The granting of a new trial ordinarily rests in the sound discretion of the trial court. (*Grace v. Martin*, 182 Kan. 33, 318 P. 2d 1007; 2 West's Kansas Digest, Appeal and Error, § 977 (5); 1 Hatcher's Kansas Digest, rev. ed., Appeal and Error, § 458.) Findings of fact by a jury, supported by evidence and approved by the trial court, as was the situation presented to us in this appeal, are conclusive (*Jackson v. Hutton*, 184 Kan. 171, 334 P. 2d 424) and cannot be disturbed.

Reference is here made to the former opinion in this case (*City*

of *Osawatomie v. Slayman*, 182 Kan. 770, 323 P. 2d 910) and to the citations therein contained.

By way of summary, we hold that the trial court did not err in instructing the jury; in refusing to submit defendants' requested special questions and in lieu thereof submitting special questions based on the issues raised in the evidence and the instructions; in overruling defendants' motion for judgment *non obstante veredicto* and finally, in overruling defendants' motion for new trial.

Judgment affirmed.