John M. VAN BUSKIRK, Respondent,

v.

MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, a corporation, Appellant.

No. 48426.

Supreme Court of Missouri,

Division No. 2.

July 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 11, 1961.

Ewing, Ewing, Ewing, Carter & Wight, Nevada, Lynn M. Ewing, Jr., Nevada, for appellant.

Sylvan Bruner, Pittsburg, Kan., Everett E. Teel, Nevada, Mo., Arthur C. Popham, Kansas City, for respondent.

Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

STOCKARD, Commissioner.

On October 4, 1958, Mrs. Edith Van Buskirk and her three minor children, Barbara Jo and Barbara Ann, eight-year-old twins, and Milburn Dale, two years of age, were killed when a train struck their automobile at a grade crossing approximately one mile south of Bayard, Kansas. In this action, brought in Missouri against the railroad, plaintiff recovered a judgment totaling $46,000 for the wrongful death of his wife and three children and for the destruction of his automobile. The defendant railroad has appealed.

Mrs. Van Buskirk, with her three children as passengers, was driving a 1955 Chevrolet automobile eastward on a public road. The railroad tracks ran approximately north and south, but at the crossing where the collision occurred they approached from a northwesterly direction. North of the crossing the tracks passed through a cut four and a half to five feet deep, and at the top of the cut and on the railroad right of way there were weeds approximately five or six feet high. The road sloped toward the crossing and passed through a cut four to five feet deep. A hedgerow was on the north side of the road

extending to within seventy-five feet, or possibly a little less, of the crossing but it was not located on railroad property.

There was evidence that the whistle (actually an air horn but referred to in the testimony as a whistle) of the train was not sounded as the train approached the crossing where the collision occurred, except for a "couple little short blasts just as they [the train] got to the crossing." Defendant's engineer, fireman and brakeman testified that the whistle was sounded commencing north of the whistle post and was continued on through the crossing where the accident occurred.

No witness for plaintiff saw the collision. Members of defendant's train crew testified that as the train approached the crossing they saw dust coming from the west along the road, and when the train was from 300 to 400 feet from the crossing the automobile came into view from behind a hedgerow. It was then between 100 and 170 feet from the crossing and traveling from 30 to 35 miles an hour. The automobile slowed down to between 5 and 15 miles an hour and when it was 15 to 50 feet from the crossing it speeded up and came on out in front of the train. The fireman testified that he could see the driver and that she appeared to be looking at the train.

Plaintiff submitted his case on the negligence of defendant in maintaining weeds and foliage upon its right of way which "dangerously and materially obstructed" the view of Mrs. Van Buskirk of the immediate approach of the train to the crossing, and also upon the statutory negligence of defendant in failing to give the required warning of the approach of the train to the crossing. Defendant first contends on this appeal that it was entitled to a directed verdict as to the claim for wrongful death of Mrs. Van Buskirk because she was guilty of contributory negligence as a matter of law.

In the presentation of his case plaintiff introduced evidence from which the jury could find that defendant was negligent in the respects submitted and that his wife and children were killed when the automobile in which they were riding was struck by defendant's train at a public crossing. Defendant does not challenge this on appeal, but it does contend in its second point that any negligence on its part was not the proximate cause of the collision and the resulting deaths. We do not understand defendant's position to be that plaintiff's evidence, standing alone, demonstrated contributory negligence on the part of Mrs. Van Buskirk as a matter of law, and if that is its contention we disapprove it. Defendant does take the position that since plaintiff presented no evidence that Mrs. Van Buskirk was in the exercise of due care, the "only basis of due care on the part of Mrs. Van Buskirk is a presumption of due care," and that plaintiff "relied on the presumption * * * to establish a prima facie case." Defendant then contends that under the law of Kansas "such presumption is to be indulged only in the absence of evidence bearing on the point," citing Brim v. Atchison, T. & S. F. Ry. Co., 136 Kan. 159, 12 P.2d 715, and Blakeman v. Lofland, 173 Kan. 725, 252 P.2d 852. Defendant then asserts that the evidence it presented "eliminates and destroys this presumption of due care," and that in the absence of the presumption Mrs. Van Buskirk was guilty of contributory negligence. It argues in its brief that the "basic proposition becomes, what happens to the presumption of due care when contravening evidence is introduced?"

■ Defendant's position erroneously assumes that reliance by plaintiff on the presumption of due care was necessary to make a submissible case. Under the law of Kansas contributory negligence is an affirmative defense, and in order for a petition to state a cause of action it is not necessary to allege that plaintiff, or in a death case that the deceased, was in the exercise of due care. Horton v. Atchison, T. & S. F. Ry. Co., 161 Kan. 403, 168 P.2d 928, 939; Central Surety & Ins. Corporation v. Murphy, 10 Cir., 103 F.2d 117. As a part of his case the plaintiff is not required

to prove absence of contributory negligence. St. Louis & S. F. Ry. Co. v. Weaver, 35 Kan. 412, 11 P. 408, 57 Am.Rep. 176. Neither is he required to establish, whether by testimony or by a presumption, that he (or the deceased) was in the exercise of due care in order to establish a submissible case. It is true that if plaintiff alleges facts which if true establishes lack of due care the petition will be held not to state a cause of action, Horton v. Atchison, T. & S. F. Ry. Co., supra, and if· his evidence shows contributory negligence the defendant may take advantage thereof by proper motion or demurrer. Samms v. Regier, 167 Kan. 556, 207 P.2d 414. But, contributory negligence or lack of due care is never presumed and must be established by evidence. When plaintiff's evidence does not establish this, as it does not in this case, it has been said by the Kansas courts that "the jury has an absolute right to disbelieve and disregard all‾evidence tending to establish its existence." Finch v. Phillips, 183 Kan. 219, 326 P.2d 763, 767; Drake v. Moore, 184 Kan. 309, 336 P.2d 807; Reda v. Lowe, 185 Kan. 306, 342 P.2d 172. As a general rule, contributory negligence as a matter of law must appear in plaintiff's case, or be established by evidence on the part of defendant which is binding on plaintiff, or which plaintiff concedes to be true. Woods v. Dalton, Mo.App., 331 S.W.2d 132, 136. It is the unusual situation, of which this case is not one, where contributory negligence on the part of plaintiff (or the deceased) as a matter of law may be established by the evidence of the defendant. See Dorsey v. Muilenburg, Mo.Sup., 345 S.W.2d 134, 141, for further discussion of this question.

■ We conclude that plaintiff's evidence did not establish contributory negligence on the part of Mrs. Van Buskirk as a matter of law; that plaintiff did not need to rely on a presumption of due care to establish a submissible case; that the jury apparently did not and was not required to believe defendant's evidence tending to show contributory negligence; and that defendant was not entitled to a directed verdict on the claim for wrongful death of Mrs. Van Buskirk for the asserted reasons.

Defendant next asserts that it was ·entitled to a directed verdict on the whole case because its negligence, if any, was not the proximate cause of the collision and the resulting deaths. It argues that the submitted ground of negligence that weeds and foliage on the right of way obstructed the view of Mrs. Van Buskirk "certainly failed to have any connection with the injury" because "the plaintiff himself testified that it was possible to see to the north from various points west of the crossing," and the pictures introduced by defendant "demonstrates the view from various points." It then asserts that the second ground of negligence which was submitted, failure to give the statutory warning by sounding the whistle, was not a proximate cause "if the driver could see the train." Defendant cites only Richards v. Chicago, R. I. & P. Ry. Co., 157 Kan. 378, 139 P.2d 427, wherein it was held, in accordance with the generally accepted rule, that even though a defendant railroad is guilty of negligence *per se* it is not liable in damages unless that negligence is the proximate cause of the plaintiff's injuries.

On cross-examination plaintiff did testify, in a somewhat confusing manner, that at various places on the road west of the railroad tracks one could see a train at stated distances on the tracks to the north. However, as the result of further cross-examination he testified that from five feet "west · of the rail" one could see northward down the track 250 feet; at "ten feet west of the rail" one "can't see for the bank and the weeds there." He was then asked· these questions and gave these answers:

"Q. In other words, until the train gets right at the edge of the road or the crossing, you can't see? A. Not if you're ten feet back of that bank there.

\* \* \* \* \* ·\*

"Q. Between ten feet from the rail, back to the right-of-way fence, what ·⁻ can you see? A. Nothing.

"Q. You can't see a train on the track at any place? A. No.

"Q. Till it is right at the crossing? A. That's right.

"Q. * * * At twenty feet west of the west rail of the railroad track, can you see a train on the tracks before it get to this crossing?

* * * * * *

"A. I don't think so.

"Q. The same would be true of twenty-five and thirty feet? A. That's right.

"Q. In other words, you can't see anything until the train gets right down to the crossing itself? A. That's right."

Assuming that the previous testimony of plaintiff on cross examination relied on by defendant was contrary to that set out above, plaintiff repudiated or corrected his previous testimony which was no more than an estimate or opinion of the various distances down the railroad tracks one could see from various places on the road. The previous testimony did not amount to a judicial admission by which he was bound to the exclusion of later testimony by him and his witness Fogel Cavin which was not inconsistent with his theory of the case or contrary to physical facts. Smith v. Siercks, Mo.Sup., 277 S.W.2d 521, 525; Martin v. Kansas City, Mo.Sup., 340 S.W.2d 645; Scott v. Kansas City Public Service Co., Mo.App., 115 S.W.2d 518. The later testimony, if believed, clearly showed that the view by a motorist of the approach of the train was obstructed. The photographs introduced in evidence by defendant tended to show that if Mrs. Van Buskirk had been looking she could have seen the approaching train, but it may also be said that the photographs indicate that there was considerable obstruction to a clear view. However, the photographs were "simply evidence" which was not binding on plaintiff or the jury. Schaefer v. Arkansas Valley Interurban Railway Co., 104 Kan. 394, 179 P. 323, 399. It was a jury question whether or not a motorist approaching the crossing could see down the track to the north, and if so from what place on the road. In Kendrick v. Atchison, Topeka & Santa Fe Railroad Co., 182 Kan. 249, 320 P.2d 1061, 1072, it was stated that "Proximate cause is most always a question for the jury. It becomes a question of law only where the facts are agreed upon and not in dispute." Whether or not an approaching motorist could see down the track to the north, and if so from what place and how far, was not an agreed circumstance or fact. Therefore, defendant was not entitled to a directed verdict on the issue of proximate cause as to the submitted negligence of permitting the growth of obscuring weeds and foliage on its right of way. Defendant contends that it was entitled to a directed verdict as to the submitted negligence of failing to sound the statutory warning only if as a matter of law Mrs. Van Buskirk could see down the track, and, as above stated, that was a jury question.

Defendant next complains that plaintiff's verdict-directing instruction as to the claim for the wrongful death of Mrs. Van Buskirk is erroneous because it fails to negative or refer to the defense of contributory negligence pleaded and submitted by defendant. By plaintiff's verdict-directing instruction the jury was required to find "that Mrs. Van Buskirk at all times used ordinary care." In Moore v. Ready Mixed Concrete Company, Mo.Sup., 329 S.W.2d 14, 24, it was stated that "in cases where the court gives a defendant's instruction submitting his affirmative defense of contributory negligence, it is error to give a verdict-directing instruction for plaintiff which fails to refer to or negative his contributory negligence." Mrs. Van Buskirk could not have used ordinary care and also have been contributorily negligent. The requirement that the jury find that she at all times used ordinary care did negative the contributory negligence on her part

submitted in the defendant's instruction. Plaintiff's instruction in this respect was not as well worded as would have resulted from good draftsmanship, but it was sufficient. See Martin v. Kansas City, Mo.Sup., 340 S.W.2d 645; Taylor v. Hitt, Mo.App., 342 S.W.2d 489, 498.

Defendant next asserts that the instruction was erroneous because there was "no basis upon which the jury could have found that Mrs. Van Buskirk 'at all times used ordinary care.'" Defendant argues that since there was no presumption of due care the jury could not have found this fact. As previously pointed out, failure on her part to use due care was an affirmative defense, and the only reason any reference thereto had to be made in plaintiff's instruction was to negative the submission of contributory negligence by defendant and thereby prevent the two instructions from being inconsistent. The phrase in plaintiff's instruction referred to is in effect a true converse instruction of defendant's instruction on contributory negligence, and as such does not need support in the evidence. See Schaefer v. Accardi, Mo.Sup., 315 S.W. 2d 230, 234; Liebow v. Jones Store Company, Mo.Sup., 303 S.W.2d 660, 662.

Instructions 4, 5 and 6 are measure of damage instructions pertaining to each child, and defendant asserts that the trial court erred in giving them at the request of plaintiff "because they are repetitious, and unduly and unnecessarily and prejudicially emphasize the deaths of plaintiff's children when considered in connection with instruction 2 and the forms of verdict." Instruction 2 was the verdict-directing instruction as to liability for the deaths of all three of the children. The only forms of verdict shown in the record are those returned by the jury. If there were others they are not set out. We note that instruction 3 was also a measure of damage instruction pertaining to the death of Mrs. Van Buskirk, but defendant makes no objection on this appeal as to it.

The three instructions objected to are the same except that each refers to the measure of damages for the death of a different child. Defendant cites three cases to the effect that repetitious instructions should not be given. However, in none of the cited cases was the issue presented whether it is prejudicial error for the court to give a separate measure of damage instruction for each death in a suit where the jury is called upon to assess damages for several deaths. Defendant concedes that normally the giving of repetitious instructions is within the sound discretion of the court, but it asserts that when separate forms of verdict and separate measure of damage instructions are used "and only one negligence instruction is used," the effect is to give undue prominence to the damage element and the deaths and to inflame the passions of the jury. This argument implies, perhaps unintentionally, that the use of the three measure of damage instructions would not have been objectionable if plaintiff had further emphasized the deaths of the three minor children by using a separate verdict-directing instruction for each child.

In a wrongful death action involving the death of one person it has been said that "it is preferable that there be only one damage instruction." Shepard v. Harris, Mo.Sup., 329 S.W.2d 1, 9. In this case the jury was called upon to determine separately the damages for the death of each child, and the use of a separate measure of damage instruction for each death was a matter within the sound discretion of the trial judge. Upon the showing made upon this appeal we cannot hold, as a matter of law, that the trial court abused its discretion.

The jury awarded damages of $10,000 for the death of each minor child. Defendant asserts that if $10,000 is a proper verdict for the death of each of the eight-year-old girls, "then the verdict for the same amount would necessarily be excessive for a two year old boy." No au-

thority for this contention is presented except to cite Section 60–3203, 1959 Supplement to General Statutes of Kansas, 1949, which authorizes recovery in a wrongful death case for mental anguish, suffering or bereavement, and for loss of society, companionship, comfort or protection. The parties tried this case on the theory that the Kansas law governed what elements could be considered by the jury in arriving at the amount of damages (see Stoltz v. Burlington Transp. Co., 10 Cir., 178 F.2d 514, 15 A.L.R.2d 762), the jury was instructed accordingly, and no complaint of this is presented on this appeal. Under the instructions, and as a general rule in wrongful death cases, the jury has an extraordinarily wide discretion in determining the amount to be awarded as compensation and that discretion should not be interfered with unless it clearly has been abused. Domijan v. Harp, Mo.Sup., 340 S.W.2d 728, 734. There is no basis for concluding that the jury exceeded its limits of discretion or that the award of compensation for the death of the two-year-old boy was excessive as a matter of law for the reason asserted.

■ The last contention of defendant is that Instructions 1 and 2 are erroneous because they required the jury to find that the statutory warning for a crossing had to be completed more than eighty rods from the crossing. Section 66–2,120, General Statutes of Kansas, 1949, requires that "A steam whistle shall be attached to each locomotive engine, and shall be sounded four times (two long and two short blasts) at least eighty rods from the place where the railroad shall cross any public road or street, except in cities and villages, * * *." The instructions each hypothesized that "if you find that on said occasion defendant failed to give warning of the approach of said train to said crossing by sounding two long and two short blasts of the whistle on said lead locomotive at the head of said train at least eighty rods before said train reached said crossing, * * *."

We do not agree that the instructions necessarily required the whistling to be completed 80 rods before the train reached the crossing, and if they do the language of the statute is subject to the same interpretation and the instructions then correctly submitted the statutory duty of defendant. Defendant cites only Kendrick v. Atchison, Topeka & Santa Fe Railroad Co., 182 Kan. 249, 320 P.2d 1061, 1063, wherein it is stated that the purpose of the statute "is to warn of approaching trains and not of trains already occupying the crossing." Defendant then asserts that under "the theory" that the whistle signal must be completed 80 rods from the crossing "there is a gap of a quarter of mile" between the last whistle and the crossing, but under "the theory" that the statute means the signal must "only be commenced" more than 80 rods from the crossing a warning all the way to the crossing is provided. This court is not authorized to determine what would be the best policy for the State of Kansas to follow as to when and where the whistle shall be sounded when a train approaches a grade crossing. The instructions substantially followed the language of the statute, and defendant does not contend that the meaning of the words used in the instructions is any different from the meaning of the words of the statute. No Kansas case is cited which holds that instructions worded as those here do not correctly reflect the statutory requirement, and we see no reason to so hold.

We find no error prejudicial to the defendant in the respects contended, and for that reason the judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.